# Douglass v. Mayor and City Council of Anniston.

*Action to recover Fine imposed upon Agent of Express Company for violation of City Ordinance, in not having taken out License Tax.*

1. *License tax against express company; can not be levied by city after payment of state tax.*—The act approved February 18, 1893, (Acts 1892-93, p. 693), which provides that express companies shall pay a privilege tax to the State, and that no company which has paid such tax "shall be liable to pay any additional privilege tax, or other tax, in this State," &c., repeals the right reserved to cities and towns to levy a license tax upon express companies as provided by the act approved. February 20, 1889, (Acts 1888-89, p. 89), and precludes a city from levying a license tax on an express company.

2. *Same; same.*—The act approved February 18, 1893, (Acts 1892-93, p. 693), providing for a State privilege tax on express companies, furnishes its own remedy for violation of the provisions of such statute, and the fact that an express company is in default thereunder, by not paying a license tax at the time specified in the statute, will not authorize a city to impose a license tax on such company.

APPEAL from the City Court of Anniston.

Tried before the Hon. JAMES W. LAPSLEY.

The Mayor and City Council of Anniston, under authority of its charter, passed an ordinance on December 22, 1893, to license, tax and regulate all kinds of business carried on in the city of Anniston. By this ordinance a license tax of $100 per annum was levied on express companies, doing business in said city of Anniston, and engaged in carrying freight to and from the city to other parts of the State of Alabama. The Southern Express Company was, during the months of January and February, 1894, engaged in the business of an express company, carrying freight to and from the city of Anniston to points within the State of Alabama, without having paid the license tax in the year 1894, which was levied by the ordinance referred to.

The appellant, Douglass, as the agent of said express

company at Anniston, Alabama, was summoned before the recorder of said city on February 12, 1894, on the charge of doing business in violation of the ordinance referred to, and was fined $100. From this judgment he appealed to the city court of Anniston. In said city court a complaint was filed in behalf of the Mayor and City Council of Anniston to recover from said J. A. Douglass, as agent of the Southern Express Company, the fine imposed by the recorder for the violation of the ordinance of the city.

The defendant pleaded the general issue, and in his third plea pleaded as follows : ''For further answer to said complaint the defendant says that by act of the General Assembly of Alabama, approved February 19th, 1893, the Southern Express Company, of which he is agent, is required to pay a privilege tax to the State ; that the said company had fully complied with the provisions of said act on the 15th day of February, 1894, and has paid the privilege tax to the State for the year 1894 ; that said act provides that 'no express company which has paid the privilege tax hereby required, shall be liable to pay any additional privilege tax or other tax in this State, except upon its real estate, fixtures, and other local property,' wherefore defendant says he is not guilty, and said company is not liable to the payment of a privilege tax to the said Mayor and City Council of Anniston.''

The plaintiff demurred to the third plea of the defendant, on the ground that the matters alleged therein constituted no answer to the complaint. This demurrer was sustained, and upon issue being joined upon the plea of the general issue, judgment was rendered for the plaintiff, the cause being tried by the court without the intervention of a jury. The defendant brings this appeal, and assigns as error the sustaining of the demurrer to this third plea, and the judgment rendered against him.

ERWIN, DUBIGNON & CHISHOLM, and CALDWELL, JOHNSTON & ACKER, for appellant.—By the act approved February 18, 1893, (Acts 1892-93, p. 693), it was declared that express companies paying a State license tax should be exempt from license taxes of municipalities ; and such provision is valid and binding. The legislature has plenary power to alter, amend, withdraw or repeal at

[Douglass v. Mayor and City Council of Anniston.]

pleasure, either by a general law operating upon the whole State, or by special statute, the charter or any particular authority conferred on a municipal corporation, and as against such power in the State a municipality can acquire no vested right.—*City Council v. Shoemaker*, 51 Ala. 118; *State ex rel. v. Mayor*, 24 Ala. 705; *Sloan v. State*, 8 Blackford, (Ind.) 361; *U. S. v. Railroad Co.*, 17 Wall. 329; *Laramie Co. v. Albany Co.*, 92 U. S. 310; *Atlanta v. Gas Light Co.*, 71 Ga. 123; *Yarmouth v. Skillings*, 71 Amer. Dec. 530; *Barnes v. District of Columbia*, 91 U. S. 540; *Brewis v. Duluth*, 13 Fed. Rep. 334; *Martin v. Dix*, 24 Amer. Rep. 661; *State v. B. & O. R. R. Co.*, 3 How. 534; *Hartford v. Hartford Bridge Co.*, 10 How. 511; 1 Desty on Taxation, 265, § 56; 1 Dillon on Munic. Corp., §§ 54, 57, 60, 62, 85.

While the act of 1893 does not, in express terms, repeal the previous act conferring the power asserted by the city of Anniston, yet by all the rules of interpretation and construction there is a necessary repeal by the most obvious implication. That a statute, general or special, may be repealed by implication without express words, and without even referring to the statute sought to be amended or repealed, seems too well established by authority to be seriously questioned.—*Rogers v. Watrous*, 58 Amer. Dec. 100; *United States v. Tynen*, 11 Wall. 92; *George v. Skeates*, 19 Ala. 738; *Watson v. Kent*, 78 Ala. 602; *Washington v. State*, 72 Ala. 272; *Lehman v. Robinson*, 59 Ala. 219; *Carlisle v. Godwin*, 68 Ala. 137; *Reese v. State*, 73 Ala. 18; *Ogbourne v. Ogbourne*, 60 Ala. 616; *Cahall v. Cit. Mut. B. Asso.*, 61 Ala. 232; *In re Wheelock*, 3 N. Y. Sup. 890; *Union Trust Co. v. Trumbull*, 27 N. E. Rep. 25; Endlich Interpretation of Statutes, §§ 230, 231.

CASSADY, BLACKWELL & KEITH, *contra*.—The act of February 18, 1893, does not repeal the provision of the charter of the mayor and city council of Anniston, authorizing license taxes on express companies.— Endlich on Interp. Statutes, § 228; *Pearce v. Bank*, 33 Ala. 693; *City Council v. Shoemaker*, 51 Ala. 120; *Roberts v. Pippen*, 75 Ala. 108; Cooley on Taxation, 146; *Street Railway Co. v. Kennerly*, 74 Ala. 583.

The judgment in this case must be affirmed for the reason that no attempt had been made to comply with

the act of February 18, 1893, before the commencement of this suit or prosecution, and the appellee could not possibly have known whether or not said express company intended to comply therewith. Said act requires payments to be made in advance on the first day of January of each year.

HARALSON, J.—Section 454 of the Code provides, that "There shall also be assessed by the assessor in each county for taxation, the following subjects at the following rates:" * * * Subdivision "6. On the gross amount of the receipts by any and every telegraph, telephone and express company, derived from the business done by it in this State, at the rate of ten dollars on the hundred dollars."

Sections 506 and 507 also provide for the assessment and collection of taxes against sleeping car and express companies doing business in this State, by the Auditor of the State, in the manner provided in those sections, which is not easily reconcilable with the provisions of said section 454, referred to above, requiring the tax assessors of the several counties to assess the taxes against said companies. Some confusion must have arisen in carrying out the provisions of these different sections, to avoid a double assessment—one by the county assessors, and the other by the State Auditor and the State Board of assessment. To remove any difficulties in this respect, as may be presumed, the legislature, at its session of 1888–89, (Acts of 1888–89, p. 89), passed an act to amend section 454 of the Code, so as to make it read: "That all *express and telegraph and sleeping car companies*, doing business between points wholly within this State, and without reference to their interstate business, shall pay in advance, on the first day of January in each year, to the Auditor of the State of Alabama, a privilege tax of $500, together with one dollar for each mile of telegraph line, or of railroad tracks, on, or along which, the lines of said companies operate or extend; and no express or telegraph company (sleeping car companies omitted), which has paid the privilege tax hereby required shall be liable to pay any other privilege or other tax in this State, except licenses required by cities and towns, and except upon real estate, fixtures and other property, which shall be taxed at the same rate as is now levied

and collected upon other property in this State." A proviso is added, that if said tax is not paid within 60 days after its maturity, a penalty of double the amount shall be imposed on such defaulting companies.

This legislation, it seems clear, was intended to take the place of sections 454 and 506 and 507 providing for taxation against said companies in this State, and to repeal the same, because inconsistent with them. This statute remained in force, as to express companies, until the session of 1892–93, when taxation against express companies became again the subject of legislation, in the adoption of the act, "To require express companies doing business in this State, to pay a privilege tax to the State." Acts 1892–93, p. 693. It provides: "That each express company doing business between points wholly within this State, shall pay in advance, on the first day of January of each year, to the Auditor, a *privilege* tax based on the mileage of railroad operated by it in this State, as follows: Each company whose lines within the State, as aforesaid, do not exceed 500 miles, shall pay at the rate of one dollar per mile. Each company whose lines within the State aforesaid, exceed five hundred, but do not exceed 1,000 miles, shall pay $1,000," proceeding with a provision for a $1,000 tax, on each additional fraction of a 1,000 miles of road, and ending: "Each company whose lines within the State as aforesaid, exceed 3,000, but do not exceed 4,000 miles, shall pay $4,000, and each company, whose lines within the State, as aforesaid, exceed 4,000 miles, shall pay $5,000; and no express company which has paid the privilege tax hereby required, shall be liable to pay any additional privilege tax, or other tax in this State, except upon real estate, fixtures and other local property, which shall be subject to taxation as other property in the State." It is further provided, that the payment of this tax to the Auditor, shall be accompanied by a sworn report, showing the number of miles of railroad operated or run by the cars of such company within this State; and on default in the making of said report, for 60 days after the first day of January of each year, including the year 1893, a penalty of double the amount of said tax shall be imposed upon, and collected of, such defaulting company, &c.

This legislation, manifestly, had no other effect, than

a complete revision of, and was intended to be a sub-stitute for, previous legislation on the subject of taxation of express companies. The act of February 20, 1889, expressly reserved, "*licenses required by cities and towns.*" This reservation is omitted in the last act, and the sweeping provision is made instead, that "no express company which has paid the privilege tax hereby required, *shall be liable to pay any additional privilege tax, or other tax in this . State,*" &c. The language itself excludes every species of tax to any corporation except that provided to be paid to the State; and, inasmuch as, under former laws, the license tax to municipalities were reserved, and are not here included, but omitted, it is too clear for argument, that such license taxes are excluded. The special power conferred upon the city of Anniston to tax express companies, by requiring them to pay a license to do business, is repealed, because directly inconsistent with this later law. Its repeal was thus accomplished by implication as effectually as it could have been done by positive legislative direction.—*Pearce v. The Bank*, 33 Ala. 693; and authorities cited in brief of counsel for appellant.

The case of the *City Council v. Shoemaker*, 51 Ala. 118, is not opposed to what we have here said. The distinction is there maintained between a specific tax on an occupation or business, and a *percentage tax on receipts;* and a general law authorizing the latter, was held not to repeal the former by implication. There was no inconsistency between the two.

4.   It is insisted by counsel for the city, that inasmuch as the express company did not pay this privilege tax to the State, until the 15th day of February, 1894, when the law required it to be paid on the first of January, that the defendant incurred the penalty provided by the city ordinance. This construction necessarily implies, that the said act of February 12, 1893, was only a partial repeal of the charter of the city, authorizing it to impose a license tax on the express company, leaving the ordinances of the city against its doing business without a license in full operative force, if the company or its agents should do any business, after the first of January of any year, without having first paid said privilege tax to the State. But, the act of 1893 furnishes its own remedy for its violation, in providing that if the company neg-

lects for 60 days to pay said privilege tax, a penalty of double the amount of said privilege tax shall be imposed upon it. It would do violence to good legislative intent, to presume that the legislature intended to impose this penalty, and leave the company and its agents, at the same time, exposed to this additional penalty by the city. They did not certainly intend to pursue this company with two penalties for the neglect of paying taxes. By the express terms of the statute, the company was relieved from paying any other privilege *or other tax* in the State. All other burdens in the way of taxation and licenses to do business, and penalties to municipal corporations for not paying them, were thus swept away, and the whole matter of the company's privileges to do business, and its liability to taxes therefor, was reserved to the State itself.

The court below erred in sustaining the demurrer to defendant's 3d plea and in its judgment against defendant, and it must be reversed and dismissed.

Reversed and dismissed.