# City Council of Montgomery *v.* Kelly.

*Prosecution for Issuing Trading Stamps Without a License.*

1. *Municipal corporation; license for issuing trading stamps; validity thereof.*—An ordinance of the city of Montgomery requiring each merchant, doing business in said city, who shall issue any trading stamps in connection with his business, to pay "a license tax of $100.00 therefor," and fixing a penalty of $100.00 for each stamp issued without having taken out said license, is unconstitutional and void.

APPEAL from the City Court of Montgomery.
Tried before the Hon. WILLIAM H. THOMAS.

The appellee in this case, William Kelly, was arrested and fined by the recorder of the City of Montgomery for issuing trading stamps, checks or devices of like kind, to his customers, without having obtained a license therefor, as provided by an ordinance of the city council of Montgomery. He appealed to the city court of Montgomery, where the case was tried *de novo*. In the city court the case was tried upon agreed statement of facts, and upon said facts the court gave the general affirmative charge in favor of the defendant, at his request. The facts as agreed upon necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

There were verdict and judgment finding the defendant "not guilty." The city council of Montgomery appeals and assigns as error the giving of the general affirmative charge requested by the defendant, and the refusal to give the general affirmative charge requested by the city council of Montgomery.

RAY RUSHTON, for appellant.—The city council under Section 18 of its charter has powers "to license all busi-

nesses, trades, occupations and professions, not prohibit-
ed by the Constitution and laws of the State   *   *   *
to fix the amount of the license and to provide a penalty
for doingbusiness  without a license." There is also a
proviso "that but one license shall be collected or re-
quired of any person   *   *   *   for any *particular*
trade, occupation or profession, using but one place of
business, &c." Acts 1894-95, page ——. It will be ob-
served that this power is not only for police regulation,
nor for revenue license only, but is authority to license
for both purposes.—*Vanhook v. Selma,* 70 Ala. 361; *Mc-
Quillan on Mun. Ordinances,* Sec. 408. As a license for
revenue and for police regulation both, or as a license for
either purpose, it is not so excessive as to be void. It is
presumed to be reasonable.—*Van Hook's case, supra.*
The fact that the business is in the nature of a lottery,
supports the reasonableness of the license.—*Van Hook's
case, supra; Langsburg v. D. C.,* 11 App. D. C. 512. It
was decided in *State v. Shugart,* 138 Ala. 11, that the bus-
iness was not prohibited by the Constitution or laws of
Alabama. It was, therefore, competent for the city to
enforce the license.

HILL, HILL & WHITING, *contra.*—The ordinance in-
volved in this controversy is clearly void. It is clearly
an attempt to place upon a legitimate business an op-
pressive and prohibitory burden, unauthorized by law
and is also discriminating against those engaged in this
business. If the ordinance is oppressive, unreasonable,
prohibitory or discriminating it is void. This is elemen-
tary law. This business is a legitimate business; it is
not a lottery nor is it a gift enterprise, no element of
chance enters into its business.—*State v. Shugart,* 35 So.
Report, 28. It is a lawful business and does not fall
within the police power.—*State v. Dalton,* 48 L. R. A.
775 (R. I. 1900); *Pl. v. Dycker,* 72 App. Div. 308 (N. Y.
1901.)—*State v. Dodge,* 76 Vt. page —— (1904.)—*Pl.
v. Gillson,* 109 N. Y. 389 (1888); *Long v. Maryland,* 74
Md. 565, (1891.)—*Comm. v. Emerson,* 165 Mass. 466
(L. 1896.)—*Comm. v. Sisson,* 178 Mass. 578; *Comm. v.
Moorhead,* 7 Co. Rep. 315; *Ex parte McKenna,* 126 Cal.

429. There are other cases, but the above are the more important and are clearly sufficient to establish the foregoing proposition, then if this business does not fall within the police power, it can not be prohibited either directly or indirectly.—*Maryland: Long v. Md., 74,* 565, 1891; *Pennsylvania: Comm. v. Morehead,* 7 Co. Rep. 315; *New York: Pl. v. Gillson,* 109 N. Y. 389, 1888; *Massachusetts: Comm. v. Emerson,* 165 Mass. 446.

SIMPSON, J.—As shown by the agreed statement of facts, set out in this case, the ordinance of the city of Montgomery provided a regular license for wholesale and retail merchants, the amount of the license fee in each case, being regulated by the amount of the stock of merchandise carried by the merchant, and by another ordinance (§ 905) provided that each person, firm or corporation engaged in any business for which a license is required and failing to pay said license should be fined not less than ten nor more than one hundred dollars.

Subsequently the city council passed another ordinance, fixing a license fee of one thousand dollars on Trading Stamp Companies (described in the statement of facts), and, later on, another ordinance requiring each merchant, who shall issue any trading stamps, in connection with his business, to pay "a license tax of one hundred dollars," and fixing a penalty of one hundred dollars for each stamp issued without said license. The defendant was tried for this last named offense, admitted the issuing of the stamps, and, on the written request of the defendant, the judge of the city court gave the general charge in favor of the defendant, the jury returned a verdict of not guilty, and the city council brings the case to this court by appeal.

The license of occupations originated in the exercise of police power, by the state and municipalities, and when a license is issued for police purposes, it must be used as a means of regulation only and cannot be used as a source of revenue, and in the case of useful trades, it cannot exceed the amount of the expense of issuing and a reasonable compensation for the expense of municipal supervision.—*Van Hook v. City of Selma,* 70 Ala. 361.

Yet a custom has grown up, until it is recognized as
one of the powers of legislative assemblies to require a
license tax of all persons, firms and corporations, pur-
suing various business callings, and it is called a privi-
lege tax, and is held not to be subject to the constitution-
al limitations, either as to amount or uniformity. Yet this
does not mean that the power to require a license tax has
no rule or limit for its guidance. Although the state may
select certain occupations and require those who engage
in them to pay a license tax, while those who engage in
other occupations are not so required; yet it cannot
make a classification which is arbitrary and has no just
or reasonable basis.—Judson on Taxation, § 459. "Dis-
crimination between members of the same natural class
have been uniformly condemned."—Id.

It has been said that a license tax is "either a license,
strictly so called, imposed in the exercise of the ordinary
police power of the state, or it is a tax, laid in the exer-
cise of the power of taxation," also that "the pursuit of
the ordinary callings of life can only be so far restrained
and regulated as such restraint and regulation may be
required to prevent the doing of damage to the public, or
to their persons.—Tiedeman's Limitations of Police Pow-
ers, p. 273.

It is sometimes difficult to determine, with accuracy,
whether a given enactment provides for a license as a
police measure, or authorizes it simply as a privilege
tax on certain occupations, though it is often important
to determine this question, in order to properly pass
upon the validity of the law; for the distinction is clear-
ly recognized, and it is also recognized that the amount
which may be fixed for a license, under the police power
is limited, as shown in a previous part of this opinion;
while a wider latitude is allowed, when it is a revenue
measure, and this court has decided that where power
is granted to a municipal corporation to license for po-
lice purposes merely, it cannot be used, as a source of
revenue.—*Van Hook v. City of Selma, supra.*

And the courts now recognize the right to so combine
the police regulations and the taxing power, as to levy a

license tax to discourage and even break up a business. Cooley on Taxation, (2nd ed.), p. 20.

But this applies only to those lines of business which, while they are tolerated, are recognized as being hurtful to public morals, productive of disorder, or injurious to public.—Tiedeman on Limitations of Police Power, pp. 273, 277, 278; 21 Am. & Eng. Ency. Law, (2nd ed.), p. 778.

Without entering into the various definitions which have been given, in order to distinguish between a license, which is strictly a police regulation, and one which is simply a privilege tax on the occupation, we think it is safe to say that, in this case, there can be no license tax imposed except one which is simply a privilege tax on the business. Not only does the ordinance itself fail to provide for any regulations which would indicate an exercise of the police powers, but the character of the business, shows it to be one of the legitimate, and useful lines of trade, which neither the state nor the municipality can subject to police regulations, with any color of reason.

Then the question arises can the law-making department of the government, in providing for privilege occupation taxes, make such discrimination between parties engaged in like lines of business, as to place additional burdens on one, which place him, to that extent, at a disadvantage, as compared with the others.

It is not disputed that the legislative department has the right to select what occupations shall bear a license tax and what one shall not, and it must be left to its discretion as to what is equal and right in that matter, and it is also admitted, as before stated, that by reason of the fact that this is not strictly speaking a tax on property, it does not come within the letter of the constitutional provision which requires that "All taxes levied on *property* in this state shall be assessed in exact proportion to the value of such property," (Const. § 211), and, while it may be said that this constitutional provision indicates a general purpose in the constitution to provide absolute uniformity in matters of taxation, and, to that extent may be looked to in construing other provisions, yet without the aid of other provisions and principles of law, it is not controlling in this case.

[City Council of Montgomery v. Kelly.]

In commenting on this constitutional provision this court has said "So long as the burden falls with equal weight upon every member of a given class, natural and artificial alike, it is difficult to formulate an argument that such levy violates any provision of our own or of the federal constitution."—*Quartlebaum v. State,* 79 Ala. 4.

And. in another case, in which it was decided that this and another similar provision did not apply to a privilege tax required of corporations, Brickell, C. J., said, "We may concede that, when a tax is imposed on avocations or privileges, or on the franchises of corporations it must be equal and uniform. The equality and uniformity consists in the imposition of the like tax upon all who engage in the avocation, or who may exercise the privilege taxed."—*Phoenix Carpet Co. v. State,* 118 Ala. 151-2.

As a constitutional warrant for this expression of the Chief Justice, our constitution provides that among the inalienable rights of every citizen "are life, liberty, and the pursuit of happiness."—Const. Ala. § 1; also "that the sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty and property, and, when the government assumes other functions it is usurpation and oppression." Const. Ala. § 35.

While the XIV amendment to the constitution of the United States prohibits a state from making or enforcing "any law which shall abridge the privileges or immunities of citizens," etc. The Supreme Court of the United States has declared that "The legislature may not. under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." *Lawton v. Steele,* 152 U. S. 137.

While perfect equality, in taxation of any kind is unattainable, yet "When, for any reason, it becomes discriminative between individuals of the class taxed, and selects some, for an exceptional burden, the tax is deprived of the necessary element of legal equality, and be-

[City Council of Montgomery v. Kelly.]

comes inadmissible."—Cooley on Taxation, (2nd ed.), p. 169, (3rd ed.), pp. 259-260.

In a case in Kentucky, where the statute required druggists to pay a license fee of $50.00 for retailing liquors, in addition to the regular druggist's license, the supreme court, while holding that, as a police measure, the subject being spirituous liquors, the license could be sustained, yet as a revenue measure, it would be unlawful "to single out * * * any particular commodity * * * or encumber with a special tax any part * * * of the druggists' trade properly embraced in the conduct of his business as a whole." "The legislature, taxing the whole, cannot again tax the parts * * * .* This would be such an arbitrary method of taxation as to be a violation of the Bill of Rights."—*Commonwealth v. Fowler*, 96 Ky. 166, 170.

"A city cannot divide a single taxable privilege, and require a separate license for each of the elements."—2 Cooley on Taxation, (3rd ed.), p. 1103, and note 1; *Ex parte Sims*, 40 Fla. 432; *Canova v. Williams*, 41 Fla. 509.

The effort to fix a discriminative license tax on department stores is declared by the supreme court of Missouri to be a violation of the Bill of Rights.—*State ex rel Wyatt v. Ashbrook*, 77 Am. St. Rep. 765, 776-7; see also *City of Chicago v. Netcher*, (Ill.), 55 N. E. Rep. 707.

The liberty which is so sedulously guarded by the constitutions of the United States, and of this and other states comprehends more than the mere freedom from personal restraint. It includes the right to pursue any useful and harmless occupation, and to conduct the business in the citizens own way, without being discriminated against either by being prohibited from engaging in it or by being burdened with discriminative taxation. If it be allowed that an additional burden may be placed upon a merchant who chooses to advertise his business by offering a small gratuity to customers in the shape of these trading stamps, it would be equally lawful to place an extra burden on one who advertises his business in the papers, or one who offers, out of his own stock, a certain gratuity to every one purchasing goods

to a certain amount, or one who erects a handsome sign in front of his store, etc.

So long as his manner of conducting his business does not offend public morals and work an injury to the public, it is his constitutional right to pursue, on terms equal to that allowed to others in like business, even though his methods may have a tendency to draw trade to him, to the detriment of competitors.—*Young v. Commonwealth*, (Va.) 45 S. E. Rep. 327; *State v. Dalton*, 22 R. I. 77; *People ex rel Madden v. Dycker*, 72 N. Y. App. Div. Sup. Ct. 308; *People v. Gillson*, 109 N. Y. 389; *Long v. State*, 74 Md. 565; *Ex parte McKenna*, 126 Cal. 429.

The only cases so far as we have been able to ascertain, in which the courts take a different view of the general subject of trading stamps are *Lansburgh v. Dist. Columbia*, 11 App. Cases D. C. 512, which was founded on a statute defining what a "gift enterprise" is, (and the court suggested that, even, in that case, the statute would not be operative in cases of a sale of some lawful article, accompanied by a gift　＊　＊　＊　where there was no chance　＊　＊　＊　and the gift was not the real object of the purchase), and *Fleetwood v. Read*, (S. Ct. of Washington), 47 L. R. A. 205, which is not supported by any authority.

In the case, now under consideraton, the defendant with other merchants, paid the regular license tax assessed in accordance with the amount of stock carried, and the ordinance in question, required of any merchant who issued trading stamps an additional license of $100.00 without regard to the amount of stock carried, and it also made him liable to a fine of $100.00 for each stamp issued, without license.

It will be noticed that this license was, not for engaging in any business, but for the manner in which he chose to conduct the business already licensed.

This is such a palpable attempt under the guise of a license tax, to fix a penalty on the merchant, for conducting his business in a certain way, that, under the authorities heretofore cited, we hold it to be unconstitutional and void. Our own court has decided that the trading stamp business is not a gift enterprise or lottery.—*State v. Shugart*, 138 Ala. 86.

[Walker v. Winn, Jr., Admr. etc.]

As to the powers granted by the city charter of Montgomery, we have not deemed it necessary to go into an exhaustive discussion, although it lies upon the surface that said charter itself provides. "that but one license shall be collected or required of any person, firm or corporation, or for any particular trade, occupation, business or profession using but one place of business in carrying on such business, trade, occupation or profession." Acts, 1894-5, p. 635, § 10.

The judgment of the court is affirmed.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.