# Bozeman *v.* The State.

*Violating Automobile Law.*

(Decided February 11, 1913.  Rehearing denied April 8, 1913.
61 South. 604.)

1. *License; Motor Vehicles; Constitutionality.*—The provisions of section 221, Constitution 1901, are intended to prevent discrimination against counties and municipalities by levying one tax for the sole benefit of the state to the exclusion and prejudice of the counties and municipalities, and hence, the provisions of Acts 1911, p. 634, providing, as it does, for the apportionment of the revenue derived from license tax on motor vehicles between the state and the county or incorporated city or town from which it is derived, are not violative of said section of the Constitution.

2. *Same.*—The state has the right to regulate the use of motor vehicles upon the public highways, and may impose a license tax or fee for that purpose, under its police power.

3. *Statutes; Construction; Extrinsic Aids.*—Where the language of a statute is clear and unambiguous, there is no room for construction, and the court cannot attempt to arrive at the intent of the law-making power by a consideration of matters aside from the language used.

4. *Same; Licenses; Revenue Law; Passage.*—The provisions of Act 1911, p. 634, constitute an exercise of police power of the state, and is not a revenue measure, notwithstanding the amount of the tax is in excess of the necessary expense of regulating and controlling the operation of such vehicles, since the tax is imposed for a specific and burdensome use of the highway, and the fund derived therefrom is apportioned among the governmental subdivisions upon which the burden of the highway rests, and the portion retained by the state is much less than the amount paid from the treasury for improvement and betterment of the highway; hence, although passed on the last day of the legislative session, the act is not invalid under section 70, Constitution 1901.

[Bozeman v. The State.]

5. *Constitutional Law; Construction; Extrinsic Aids.*—Where the meaning of a constitutional provision is plainly expressed by its words, extrinsic sources of information will not be considered to impute another meaning to the language used, such as the debates or amendments offered, etc.

6. *Same; Persons Entitled to Questions; Validity.*—One not directly affected cannot complain that a statute violates constitutional provisions, and hence, a resident of this state cannot raise the question that section 16, Acts 1911, p. 634, violates article 4, section 2, Constitution of the United States.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Robert H. Bozeman was convicted of violating the automobile law in that he operated a motor vehicle upon the public highway without license, and he appeals. Affirmed.

ARRINGTON & HOUGHTON, for appellant. Section 7 of the Motor Vehicle Law is in direct conflict with section 221, Constitution 1901. Counsel quote from the proceedings of the Constitutional Convention to show the construction to be given that section. As to the proper construction they cite also.—*Little v. Foster,* 130 Ala. 163; *Ex parte Mayor,* 78 Ala. 23; *Lehman v. Robinson,* 59 Ala. 241; *State ex rel. v. Thompson,* 129 Ala. 106; *State ex rel. Robinson v. McGough,* 118 Ala. 166; 8 Cyc. 840. It is also contended that sections 9 and 16 are as obnoxious as is section 7. Counsel also contend that the license fee is an exercise of the police power and that it is unreasonable and void.—*Commissioners v. Boyd,* 188 Mass. 79; *State v. Parker,* 59 South. 741; *Van Hook v. Selma,* 70 Ala. 361; *Smith v. Commissioners,* 117 Ala. 196; Section 211, Constitution 1901. Section 16 of said act violates article 2, section 4 of the Constitution of the United States.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. Defendant

cannot complain that the act violated section 221 of the
Constitution, since the sole purpose of that section is
for the protection and benefit of the towns and cities,
and not of any individual.—8 Cyc. 791; *State ex rel.
Thomas v. Gunter,* 170 Ala. 165; 49 N. E. 582; 47 N. W.
44. The fee or tax is not one which a municipal corpora-
tion could levy under its general power. It would re-
quire specific authority.—*City of Mobile v. Gentry,* 170
Ala. 234. It is an exercise of the police power and not
a revenue bill, and hence is not affected by section 70
of the Constitution.—*Kennemar v. The State,* 150 Ala.
74. The fact that the act does raise revenue cannot
of itself make the act a revenue statute.—*Dunbar v.
Frazer,* 78 Ala. 531; *Shepherd v. Dowling,* 127 Ala. 1.
That the act is not violative of section 221, is determined
by the case of *City of Birmingham v. Southern Express
Co.,* 164 Ala. 529. On the authorities cited first above
it must be said that the defendant cannot raise the ques-
tion that section 16 of said act violates section 2 of arti-
cle 4 of the Constitution of the United States.

PELHAM, J.—The appellant, a resident of the city
and county of Montgomery, in the state of Alabama,
being the owner of a motor vehicle which he operated
on the public highways of the state without paying a
license tax or registration fee, as required by the pro-
visions of the Motor Vehicle Law, was convicted on an
indictment charging this offense under the provisions
of the act of the Legislature approved April 22, 1911,
known as the Motor Vehicle Law (Acts 1911, pp. 634-
650), and in prosecuting this appeal the appellant con-
tends that the act is void, in that it offends certain con-
stitutional requirements.

The principal argument and attack seem to be based
on the contention that section 7 of the Motor Vehicle

Law offends section 221 of the Constitution of the state. These sections read as follows:

"Sec. 7. The following license tax or registration fee shall be charged on motor vehicles used for private use: Seven and one-half dollars for each motor vehicle having a rating of less than twenty horse power." The section, after fixing the license to be charged for motor vehicles with different horse power, then concludes as follows: "Said several sums of money charged as a license tax herein. shall be paid to the Secretary of State and forty per centum of the gross revenue derived from any incorporated city or town shall revert to the treasurer of the city or town in which the owner or licensee resides, and forty. per. cent. of the gross revenue derived from any county outside of any incorporated city or town shall likewise revert to the treasurer of said county. The registration fee, or license tax, shall be in lieu of all other privilege license which the state or any county or municipality thereof might impose, but nothing in this section shall be construed to prevent the collection of any ad valorem tax."—Acts 1911, p. 636.

"Sec. 221. The Legislature shall not enact any law which will permit any person, firm, corporation, or association to pay a privilege, license, or other tax to the state of Alabama, and relieve him or it from the payment of all other privilege and license taxes in the state." —Constitution of 1901.

This section of the Constitution means, as we read the plain language employed by the framers of the Constitution to express the meaning and purpose of the provision, that the Legislature is prohibited from enacting a law that would require the payment of one privilege tax or license fee for the benefit of the state alone, to the exclusion of the counties and municipalities; and a statute or legislative act providing for the payment of

a state license tax and relieving the person, firm, corporation,. or association so taxed from the payment of any and all other privilege and license taxes to the county or municipality would be repugnant to the said section 221 of the Constitution. The language of this section is plain and unambiguous, and its import may be easily gathered from the diction, and it does not mean, and cannot fairly be construed to mean, that the Legislature is inhibited from enacting a law providing for the payment of a privilege tax or license fee to the state, counties, and municipalities in fair and reasonable proportions, and make such privilege tax or license fee the only privilege tax or license fee that can be levied or collected by the state, counties, and municipalities. The plain and evident purpose of section 221 to be gathered from a fair and reasonable interpretation of the language employed is to prevent the Legislature from discriminating against counties and municipalities by levying one privilege tax or license fee for the sole benefit of the state, to the exclusion and prejudice of the counties and municipalities. While the act in question (section 7) does not expressly in so many words designate the assessment or charge a state, county and municipal privilege tax, yet this is its evident purpose and effect, and it is in fact and effect a charge made for a state, county, and municipal privilege tax, and does not provide for the payment of a state tax only, to the exclusion and in lieu of the payment of privilege license taxes for the benefit of counties and municipalities, but, on the contrary, this statute includes and provides for the payment of a privilege tax in fair and reasonable proportion for the benefit of the counties and municipalities as well as for the state.

The license or privilege tax assessed against express companies (Code 1907, § 2086) is similar to the act in

question, in that it provides for the collection of a state privilege tax and a graduated municipal privilege tax based on population, in lieu of all other taxes of whatever nature except an ad valorem tax. This section (2086) was upheld in the attack made against it in the case of *City of Birmingham v. Southern Ex. Co.,* 164 Ala. 529, 51 South. 159. In rendering the opinion of the court in that case MAYFIELD, J., specifically stated that it was not necessary to pass upon the question of whether or not the statute was valid as opposed to the provisions of section 221 of the Constitution, but the learned justice said in effect in that case, however, that this constitutional provision was no doubt adopted because of the various general and local statutes (and the construction that had been placed upon them) authorizing the assessment of different and conflicting license or privilege taxes on express companies, and that a statute attempting to deal with the whole subject and definitely fixing the state and municipal license taxes in lieu of all other such taxes assessible against said companies was, no doubt, called forth to comply with this constitutional requirement. And as the Legislature is not inhibited by any constitutional restraint from levying such a privilege or license tax for the benefit of the state so long as it is not the sole tax and in lieu of all other license taxes, and as the Legislature at the same time can limit and fix the amount that shall be received by the counties and municipalities, there would seem to be no good reason that could be urged or sound logic advanced why both of these requirements for the payment of license fees or privilege taxes could not be embraced in the same act, as is done in the statutes providing for the payment of license taxes by express companies, and as is done by the act in question with respect to motor vehicles.

[Bozeman v. The State.]

The meaning and intention of section 221 of the Constitution, we think, are plain, and need no extrinsic aid as an assistance to its construction, but only interpretation of the language used, to arrive at its sense and give it the proper force and application. When the language as used by the lawmakers is plain, it is the duty of the courts to obey; no discretion is left, and courts should not stray into by-paths or search for reasons outside of the plain letter of the law upon which to rely for the purpose of giving a different meaning or interpretation, for "when the language is plain it should be considered to mean exactly what it says."—*Little v. Foster,* 130 Ala. 163, 30 South. 477. So, where the language of the statute is clear and unambiguous, there is no room for construction, and it is only when the meaning and intent are not obvious that the courts attempt to arrive at the lawmakers' intent by considering other matters aside from the language used.—*City of Birmingham v. So. Ex. Co.,* 164 Ala. 529, 51 South. 159.

When the meaning of a constitutional provision is plainly expressed by its words, there can be no occasion or excuse for a resort to extrinsic sources of information as to its import. As in such case the court would not be justified in according to the provision any meaning other than that which its words express, it would be wholly inappropriate for the debates of the constitutional convention on the occasion of its adoption of the provision in question, or substitutes or amendments then proposed and rejected, to be looked to to find another meaning to impute to the language used.—*Lane v. Kolb,* 92 Ala. 636, 655, 9 South. 873; *State ex rel. Robertson v. McGough,* 118 Ala. 159, 166, 24 South. 395; Cooley on Const. Lim. 69, 70; *Lehman v. Robinson,* 59 Ala. 241; *United States v. Freight Association,* 166 U. S. 290, 318, 17 Sup. Ct. 540, 41 L. Ed. 1007; 36 Cyc. 1139.

The appellant discusses as one proposition the related questions of whether sections 7, 9, and 32 of the Motor Vehicle Law are violative of this section of the Constitution, and we treat the matter in the same way. It does not seem to us that these sections offend the constitutional provision as pointed out and insisted upon by appellant.

The act is also attacked as an attempt of the Legislature to raise revenue under the guise of a police regulation, and the argument is made that, the act having been passed on the last day of the legislative session, it cannot be upheld as a revenue measure (Constitution, § 70), and that, as the amount of license exacted by the tax is in excess of the necessary expense of regulating and controlling the operation of motor vehicles, it cannot be imposed under the authority of the police power, but of necessity, because of the amount fixed or designated, becomes a revenue measure. It is not to be questioned, but is now a settled principle of the law, that the state has the right to regulate the use of motor vehicles upon the public highways of the state, and may impose a license fee or tax under the police power for this purpose.—Berry's Law of Automobiles, § 80; Huddy's Law of Automobiles, p. 78, and authorities cited by these authors in notes to the sections referred to. And we think the act in question is clearly the exercise of the right to exact a license tax under the police power of the state. The purpose of levying the tax to be gathered from the provisions of the act is not "to levy a tax as a means of collecting revenue" (*Perry County v. Selma R. R. Co.*, 58 Ala. 546, 557), but for the general purpose of regulating and controlling the use of motor vehicles on the public highways. The right of a county to levy a license tax on vehicles for the use of its roads is upheld by the Supreme Court in the case of *Kenna-*

*mer v. State,* 150 Ala. 74, 43 South. 482, and the act declared not to be "a bill for raising revenue" that must be passed in accordance with section 70 of the Constitution, though the tax levied under the provisions of the act passed upon was more than sufficient to regulate the use of vehicles, and was applied to the maintenance, improvement, and protection of the public roads and the liquidation of a road debt. If the act passed upon in the case last above cited was one "not simply to raise revenue through the indirect method of license fees," then it cannot be said that the act in question is such a one.

The act under consideration seems to afford a general system for the regulation and control of the use of motor vehicles on the public highways of the state, and the license fee exacted is in furtherance of this general purpose, and was not, as was said in *Kennamer's Case, supra,* "simply to raise revenue through the indirect method of license fees," but on the contrary, as was also the fact in *Kennamer's Case,* for the purpose of requiring those making this particular use of the public roads to pay a reasonable sum for the privilege. The charge exacted by this act for an automobile tax is for a specific and burdensome use of a public utility; and, though the fund derived from the fees charged is not appropriated directly to such utility, yet it is apportioned among the governmental subdivisions upon which the burden of its maintenance rests, and, if the portion retained by the state is in excess of the amount necessary to regulate and enforce the law, yet the excess goes into the state treasury, out of which the counties of the state are paid sums for the improvement and betterment of this public utility far in excess of the amount derived from this source.

The act approved December 9, 1898 (Acts 1898-99, p. 108), commonly known as the "Dispensary Law," was

declared by the Supreme Court not to be an act "for raising revenue," but in fact and theory a police regulation, although as an incident of the act considerable revenue was derived.—*Sheppard v. Dowling,* 127 Ala. 1, 28 South. 791, 85 Am. St. Rep. 68. The act under consideration is, we think, in its general scheme and purpose, one to provide for the proper regulation of motor vehicles as a police regulation, and not one "for raising revenue" within the meaning of section 70 of the Constitution.

Whether or not section 16 of the Motor Vehicle Law is violative of section 2, art. 4, of the Federal Constitution, the appellant is in no position to raise the question, as the record shows that he is a resident of the city of Montgomery in this state, and does not belong to that class (non-residents of the state) affected by the provisions of section 16, which the appellant contends discriminates against certain non-residents because the state of their residence does not reciprocate the privilege granted to the residents of states that do reciprocate. One who is not directly affected cannot complain that a statute violates constitutional provisions. —*State ex rel. Thomas v. Gunter,* 170 Ala. 165, 54 South. 283.

The act in question is not liable to the objections urged as rendering it void as offensive to the constitutional provisions pointed out, and the court was therefore not in error in overruling the defendant's demurrers grounded on such contention. The validity of the act being established as against the attack made against it, there was no error in refusing the general charge requested, as the defendant was properly convicted under the agreed statement of facts set out in the record, and the case will be affirmed.

Affirmed.