(117 So. 673)

## EXCHANGE DRUG CO. v. STATE TAX COMMISSION et al. (3 Div. 837.)

Supreme Court of Alabama. May 10, 1928.

Rehearing Denied June 28, 1928.

116

Richard T. Rives, Sp. Asst. Atty. Gen., and Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellees.

R. B. Evins, of Birmingham, for appellant.

SAYRE, J. The appeal brings into review the order of the circuit court of Montgomery denying an injunction to restrain the state tax commission from enforcing the collection of the tax imposed by subdivision 2–J of section 2 of the General Revenue Act of 1927 (Acts 1927, p. 142). The sole question presented for decision involves the constitutional validity of that part of the section which levies upon "every person, firm, company, corporation or association of persons, who sells cigars, cigarettes, cheroots, or any substitute therefor, within the state of Alabama * * * a license or privilege tax of an amount equal to fifteen per cent. of the wholesale price of such cigars, cigarettes, cheroots, or any substitute therefor, sold within this state." The tax is levied "for state purposes only." The concluding provision of the subdivision of the section is:

"No county shall levy a privilege or license tax on any business or occupation on which a privilege or license tax is levied in this section or any subdivision thereof."

The most serious attack upon the statute is based upon section 221 of the Constitution for that it levies a privilege tax on the sale of the designated commodities for the sole benefit of the state and prohibits the levy of

any tax upon the same privilege by any county.

Section 221:

"The Legislature shall not enact any law which will permit any person, firm, corporation, or association to pay a privilege, license, or other tax to the state of Alabama, and relieve him or it from the payment of all other privilege and license taxes in the state."

This branch of the inquiry turns of course upon the true meaning and effect of the section of the Constitution quoted above, and the opinion of this court in Ex parte Bozeman, 183 Ala. 91, 63 So. 201, is relied upon as a precedent which ought to be conclusive in this case. The tax under consideration in that case arose out of the Motor Vehicle Law of 1911 (Acts 1911, pp. 636, 637, § 7); the provision being that:

"Said several sums of money charged as a license tax herein shall be paid to the secretary of state and forty per centum of the gross revenue derived from any incorporated city or town shall revert to the treasurer of the city or town in which the owner or licensee resides, and forty per cent. of the gross revenue derived from any county outside of any incorporated city or town shall likewise revert to the treasurer of said county. The * * * license tax shall be in lieu of all other privilege licenses which the state, or any county or municipality thereof might impose, but nothing in this section shall be construed to prevent the collection of any ad valorem tax."

The contention in that case, as in this, was that the act violated section 221 of the Constitution. The decision was that, since the act divided the tax equitably between the state and the counties and municipalities in which it was collected, there was a substantial compliance with the constitutional mandate, and the court seemed to concede that the act would have been without the constitutional competency of the Legislature if it had not made provision for counties and municipalities as we have noted. This court commended the opinion of the Court of Appeals—from which the question then at issue came to this court by certiorari—as an able, exhaustive, clear, and unanswerable exposition of the law of the case, and thus committed itself to the views expressed by that court. We are under necessity, therefore, to consider the opinion rendered by that court. 7 Ala. App. 151, 61 So. 604.

In the opinion of the Court of Appeals:

"The plain and evident purpose of section 221 to be gathered from a fair and reasonable interpretation of the language employed is to prevent the Legislature from discriminating against counties and municipalities by levying one privilege tax or license fee for the sole benefit of the state, to the exclusion and prejudice of the counties and municipalities."

When the question reached this court (Ex parte Bozeman, supra), Judge Mayfield dissented on the ground that the act was violative of the express or implied authority vested in counties, cities, and towns by the Constitution to levy and collect license and privilege taxes. His opinion was that counties and cities and incorporated towns had under the Constitution the right to levy and collect privilege or license taxes for themselves and in amounts determined by them, each for itself. He speaks of express and implied constitutional authority. He adds:

"If the municipalities had no such constitutional right or power to so levy and collect such taxes, and the provision [meaning, as we understand, section 221 of the Constitution] did not confer such right, then the provision in question would be wholly nugatory."

Judge McClellan also dissented, but the specific ground of his objection to the majority opinion is not stated.

A statement of the related statutory law as it was at the time of the incorporation of section 221 into the Constitution (1901) and as it was at the time of the passage of the "Motor Vehicle Law" (1911) and at the time of the act now under examination (July 22, 1927) will be serviceable in reaching a proper solution of the question presented for decision.

In Askew v. Hale County, 54 Ala. 639, 25 Am. Rep. 730, a case in which the question was whether the county was liable in damages for the consequences of its failure to keep a public bridge in repair Brickell, C. J., and the court with him, held that, while a county has corporate characteristics, it is in no proper sense a municipal corporation, but a governmental agency, possessing no power and subject to no duty except as power and duty may be conferred and imposed by the statute creating it. But the Constitution of 1901 deals with counties in some sections under the heading "Municipal Corporations," where section 221 is to be found, as also it does in the chapter on "Taxation." In the Code of 1896, in force at the adoption of the Constitution of 1901, counties were authorized to add to the license taxes levied for the use of the state not exceeding 50 per cent. for county purposes. Code 1896, § 4123. The same provision was carried into the Code of 1907 (section 2362), and into the Revenue Act of 1919 (Acts 1919, p. 440, § 362). Prior to the "Municipal Code" (Code 1907, § 1046 et seq.) the right of municipalities—so to speak of cities and towns—to levy and collect license or privilege taxes appear to have depended on the several charters which had been granted by special legislative acts. The right to license occupations was conferred on municipalities and regulated by general act in 1907. Code 1907, § 1338 et seq. Continuously, counties have had the right to levy license taxes. We conclude, therefore, that section 221 of the Constitution relates to license taxation by counties as well as by cities and

118

towns. But this conclusion is not conclusive of this appeal.

In the constitutional convention of 1901 there was differences of opinion as to the meaning of section 221. But the historical background of the section is plain enough. It is correctly stated by Judge Mayfield in Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159, and again in his dissenting opinion in Ex parte Bozeman, 183 Ala. 114, 115, 63 So. 201, and need not be repeated. An example of the legislative method of dealing with the subject of municipal license taxes to be paid by public service corporations, which did business in the municipalities of the state, is furnished by the case of Douglass v. Anniston, 104 Ala. 291, 16 So. 133. That case is but an example of the legislative habit of changing from license taxation by the state and its municipalities, each for itself, to taxation by the state for its own use exclusively, and vice versa, and Judge Mayfield correctly states that it was the purpose of the convention in framing section 221 to put an end to the practice. This provision, introduced into a revised Constitution, must be construed and allowed such operation as will secure the purpose for which it was introduced, and that purpose is to be ascertained from a just consideration of the causes in which it originated. Mobile v. Stonewall Ins. Co., 53 Ala. 570, 577. That the section in question did put an end to the practice, by one and the same legislative act, of permitting the payment of a privilege tax to the state and thereby relieving the taxpayer of all other privilege taxes leviable by law at the time of the act, will not be doubted, for that is the literal meaning of the section; but, in our judgment, after further reflection, that is precisely all it does. In other words, section 221 forbids the Legislature to levy a license tax for the use of the state and at the same time relieve licenses of all other taxes of like kind. We are unable to concur in the notion that the Constitution has conferred on counties and municipalities any vested right to levy privilege or license taxes—herein dealing with taxes of that particular description differently from the method adopted with respect to property or ad valorem taxes. It has left the right and the manner of its conference to be regulated by the Legislature, with this exception, in practical effect that, if the Legislature would levy a privilege tax for the state, it must permit either counties or municipalities to levy a license tax on the same occupation. It cannot deny the right to both of them. The controlling purpose, we infer, was to preserve the right of municipalities to levy a tax in cases in which a tax is levied for the state; but the language of the section was so ordered as to preserve the right to counties or municipalities in the alternative, but not to both of them at the same time.

In every other respect the Legislature has full power over the matter of reasonable privilege or license taxation. The section does not prohibit relief from any, but from all, other privilege and license taxes in the state. Such is the plain language of the Constitution and the court has no choice but to abide by it. The language of the court, arguendo, in Ex parte Bozeman, went beyond the necessities of that case in declaring that the state, when it would levy a privilege tax for its own use, must confer a like privilege on both counties and municipalities, for, in that case, both had been cared for and the only question presented for decision was whether the state might levy and collect the tax for counties and municipalities; that is, whether the state might levy and collect the tax and meet the requirement of the Constitution by paying shares of it to counties and municipalities. That question, we think, was correctly decided in the affirmative though the argument for the conclusion reached was faulty in part. Now that the issue is squarely presented, we follow the letter of the Constitution, which we must presume the Legislature followed, and hold that the license tax on dealers in cigars, cigarettes, cheroots, or any substitute therefor, imposed by subdivision 2–J of section 2 of the General Revenue Act of July 22, 1927, does not offend against section 221 of the Constitution.

In Birmingham Interurban Taxicab Service v. McLendon, 210 Ala. 525, 98 So. 578, this court, speaking of sections 220 and 221 of the Constitution, said:

"They are in the nature of a bill of rights * * * protecting municipalities in the matter of privilege taxes."

We think it should now be noted that no question arising out of section 221 of the Constitution was involved in that case, nor was there any discussion of the meaning and effect of that section. There can be no objection to the statement that the two sections are in the nature of a bill of rights for municipalities; but the ascertainment of the precise rights thus protected, so far at least as concerns section 221, presents another question as to which in that case nothing was said, nor was there occasion for anything to be said. Nor were the rights of counties involved. It is therefore no authority in the present case.

Another objection to the act under review on constitutional ground is that it denies to appellant the equal protection of the law, in that, to quote the language of appellant's brief on this branch of the case:

"Neither the allegations of the bill, nor the supporting affidavits, are controverted in any way, and the case went to the trial court, and comes to this court, on this admitted state of facts, viz. that there are a number of retailers of cigars, cigarettes, and cheroots doing business in Alabama, who do a business of such

volume that the manufacturers of cigars, cigarettes, and cheroots will sell to them direct, at the same price that they sell these articles to the jobber; that the appellant, and many other retailers of these articles in Alabama, cannot, on account of the small volume of business which they do, buy directly from the manufacturer, and must buy their stock from the jobber, who charges them the price which he pays the manufacturer, plus his profit. The result is that the first class of retailers buy at a smaller price than it is possible for the second class to buy. The price which each buys at is the wholesale price to him. Consequently, the appellant, and others in like situation, pay a tax in the amount of 15 per cent. of one sum, while other retailers pay a tax of 15 per cent. of another and smaller sum."

The act provides that:

The licensees, under subdivision 2–J (Acts 1927, p. 142), "shall pay to the state for state purposes only, a license or privilege tax of an amount equal to fifteen per cent. (15%) of the wholesale sales price of such cigars, cigarettes, cheroots, or any substitute therefor sold within this state. * * * The payment of the tax as imposed by this section shall be based on the wholesale selling price of the articles enumerated herein, and only one sale made of the same article within the state shall be used in computing the amount of the tax due."

Appellant's more summary statement of its contention as to the practical effect of the law in this regard is that:

"Those retail dealers who buy from the manufacturer shall pay a tax of 15 per cent. on the price paid by them to the manufacturer, and those retail dealers whose business is too small to enable them to buy from the manufacturer shall pay 15 per cent. on the larger price charged them by the jobber."

And appellant quotes Phœnix Carpet Co. v. State, 118 Ala. 143, 151, 22 So. 627, 628 (72 Am. St. Rep. 143), as follows:

"We may concede that when a tax is imposed on avocations, or privileges, * * * it must be equal and uniform. The equality and uniformity consists in the imposition of the like tax upon all who engage in the avocation, or who may exercise the privilege taxed."

Appellant's complaint is, in effect, that retail dealers of large means or doing a large business may be able to command a smaller wholesale price than the dealer of small means or doing a small business. The tax is graduated, we observe, to the extent of the business done—the financial volume of the business done by any licensee measured by the wholesale price of the goods disposed of. It is obvious that differences in the opportunities enjoyed by licensees in every branch of business must arise out of the circumstances, financial and other, in which they find themselves, and that, if the statute law were by the Constitution required to adjust itself to the varying circumstances of individual

licensees, no law imposing a license tax would be possible. The principle of equality before the law is universally accepted in this country, and the courts recognize the fact that perfect equality in taxation of any kind is unobtainable (Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209), and yet license taxation prevails everywhere. The necessary corollary is that, in general, legislation of this sort is not to be condemned because in its application to individuals it involves inequalities; but "when, for any reason, it becomes discriminative between individuals of the class taxed, and selects some, for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible." 142 Ala. 557, 38 So. 69, 70 L. R. A. 209. In this law no discrimination is made between or against individuals. Every man belonging to the same class, viz. the class of men who would buy and sell tobacco, may do so with what advantage money, location, business connections, or what not, may give him, but with perfect equality of opportunity so far as the law is concerned. Appellant refers to Montgomery v. Kelly, supra. Whatever may be thought of the decision in that case, it is no authority against the validity of the tax in this. So of Alabama Consolidated Coal Co. v. Herzberg, 177 Ala. 248, 59 So. 305. There is in this case no fact such as served the court as a basis for declaring the license taxes there involved to be discriminatory and void. Nor is there any arbitrary power lodged in any official to grant or deny a license as was held to be the case in Woco Pep Co. v. Montgomery, 213 Ala. 452, 105 So. 214. In short, we find no objection to the subdivision of the act in question on the ground just here under consideration.

Finally, it is urged that this tax, though called a license or privilege tax, is in fact a tax on property and, as such, violative of sections 211, 214, and 217 of the Constitution of Alabama, which, to state their subject in brief, relate to the necessary equality and limited extent of ad valorem property taxes. The tax here is levied on the privilege of selling tobacco, and, though the amount of it is regulated by the volume of business done, it is too late now to question the conclusion that it is an occupation tax, not a tax on property. This question was argued with great elaboration by able lawyers and carefully considered by the court in Republic Iron & Steel Co. v. State, 204 Ala. 469, 86 So. 65, where it was ruled against appellant's contention with the citation of numerous adjudicated cases in this and other jurisdictions. We may now add Oliver Iron Mining Co. v. Lord, decided by the Supreme Court of the United States in 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929, and 37 C. J. p. 172, where it is said that:

120

"If the tax is levied upon persons on account of their business, it will be construed as a license or occupation tax, even though it is graduated according to the property used in such business, or on the gross receipts of the business"—citing many cases.

The judgment of the circuit court upholding the tax in question is affirmed.

Affirmed.

All the Justices concur, except GARDNER, J., not sitting.

### On Rehearing.

SAYRE, J. We disclaim any intention to approve anything said in the Bozeman Case by this court or the Court of Appeals except the stated conclusion that the tax then under consideration violated no provision of the Constitution. Nor did we do more than this in the original opinion in this case. We refrained to what extent we could from any discussion of the argument of the opinions in those cases. We intended to pay no left-handed (as brief suggests) compliments to the framers of section 221 of the Constitution. Nevertheless, we are willing now to say that the section in question appears to have been framed with a view to the form of statutes in the cases to which it is applicable—the form which previous enactments had taken when they levied a license tax for the use of the state and denied the right of municipalities to levy a similar tax for their use. However, when the section in question regulated form, it had effect upon substance and that effect was that, if the Legislature would levy a privilege or license tax for the use of the state, it must permit counties or municipalities (so to speak of cities and towns), one or both, to levy a similar tax. With the wisdom of the section we are not concerned. But we feel constrained to say that it has the meaning we have assigned to it or it means nothing. We cannot well be expected to say that the section means nothing.