# Dauphin & LaFayette Streets Railway Co. *v.* Kennerly.

74 583
125 421

*Action against Tax-Collector, for Money paid as Taxes.*

1. *Statutory exemptions from taxation* —When a claim of exemption from taxation, total or partial, is asserted by a corporation or an individual, the legislative intent must be expressed in clear and unambiguous terms, and can not be inferred from language of doubtful import; the rule of construction, in reference to such statutes, requiring that "the narrowest meaning is to be taken which will fairly carry out the intent of the legislature."

2. *Powers of corporations.*—A corporation takes nothing by its charter, except what is plainly, expressly, and unequivocally granted, or necessarily implied; and in all things else the powers which the State may exercise over its affairs are as full and ample as over individuals carrying on the same business.

3. *Proviso to statute.*—The appropriate office of a proviso to a statute is to modify or limit the enacting clause, or to except something which would otherwise be included in it; and when annexed to a statute granting powers to a corporation, it will not be construed to enlarge those powers, or to operate as a grant of other privileges.

4. *Commutation tax on railroads in Mobile; not applicable to corporation constructing road under special charter.*—By an act approved February 4th, 1860, the corporate authorities of the city of Mobile were authorized to grant to any person, association or company, the right and privilege of constructing a railroad along and through any streets in the city, for a period not longer than twenty years, and to prescribe the kind of rail to be used, the width and length of the track, the location of turnouts, &c.; and they were authorized to impose and collect, "from each company, person or association erecting any railway under the authority of this act," a tax of one dollar on every hundred dollars of the gross earnings of such railway company, which tax, it was declared, "shall be in lieu and in full of all taxes and impositions of any nature in favor of said city of Mobile, upon such railway, equipments, stock and append-

[Dauphin & LaFayette Streets Railway Co. v. Kennerly.]

ages." The appellant corporation, chartered in 1858, under the name of the "Mobile Omnibus Company," was authorized by an act amending its charter, approved February 24th, 1860, "upon obtaining the consent of the corporate authorities of the city of Mobile, to construct and use their railway or railways on any street or streets in said city; *provided*, however, that all restrictions, limitations and conditions prescribed in the act" above named, approved February 4th, 1860, "shall apply to said company, should it obtain the privilege from said city authorities to construct and use such railroad." *Held*, that the provision in reference to the special tax authorized by said act of February 4th, 1860, was not one of the "restrictions, limitations and conditions" referred to in the proviso; and that said corporation, having obtained the consent of the city authorities, and constructed its railroad through the streets of the city, could not claim the benefit of said provision, and was subject to other taxation.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by the appellant, a domestic corporation, against Lewis H. Kennerly, "as tax-collector under special act of the General Assembly of Alabama approved December 8th, 1880. entitled 'An act for the adjustment and settlement of the debts of the city of Mobile;'" and was commenced on the 8th February, 1882. The complaint contained a special count for money had and received, claiming $168.78, which was alleged to have been wrongfully and illegally exacted and collected by defendant under color of his office as tax-collector, and to have been paid by plaintiff under protest and compulsion. The facts of the case, as agreed on and reduced to writing, were as follows:

"It is agreed that the track of the plaintiff's railway was laid in the summer and fall of 1860, and that it commenced operations as a street railroad on the 25th December, 1860, under the original charter name of the Mobile Omnibus Company, passed by the General Assembly on the 26th January, 1858, and afterwards amended by an act approved February 24th, 1860; and that plaintiff, subsequently to the passage of said amendatory act, obtained the consent of the corporate authorities of the city of Mobile to construct and use a street or horse railway, on Dauphin street in said city, for the transportation of passengers and merchandise; and that from and after said railway was constructed as aforesaid, up to the passage of the act of the General Assembly approved February 11th, 1879, entitled 'An act to vacate and annul the charter and dissolve the corporation of the city of Mobile, and to provide for the application of the assets thereof in discharge of the debts of said corporation,' plaintiff paid annually to the mayor, aldermen and common council of the city of Mobile, but quarter-yearly, on the call and demand of the tax-collector of said corporation, one dollar of every hundred dollars of the gross

[Dauphin & LaFayette Streets Railway Co. v. Kennerly.]

earnings of said railway company, under the provisions of an act of the General Assembly of Alabama, approved February 4th, 1860, entitled 'An act to enable the corporate authorities of the city of Mobile to grant the privilege of constructing railroads within the corporate limits of said city.'

"It is further agreed, also, that the General Assembly of Alabama passed an act, entitled 'An act to incorporate the port of Mobile, and to provide for the government thereof,' approved February 11th, 1879 ; and that said port of Mobile was organized under and according to said act ; and that from and after the passage of said last named act, down to and including the year 1881, plaintiff has annually paid to the corporate authorities of said port of Mobile, in quarter-yearly installments, on the call and demand of the tax-collector of said port, one dollar of every hundred dollars of the gross earnings of said railway company, claimed as its municipal tax as provided by said act of February 4th. 1860 ; and that the money herein sued for was claimed by defendant, as tax-collector, for taxes on plaintiff's railway, equipments, live-stock, rolling-stock, and road-bed, being within said city and port, for the year 1881, laid and assessed under and in accordance with an act of the General Assembly of Alabama, approved December 8th. 1880, and the act amendatory thereof, for the adjustment and settlement of the debts of the city of Mobile, and was paid by plaintiff under protest, and to obtain a release of its property levied on by defendant as such tax-collector, as shown by his receipt hereto attached as a part of this agreed statement of facts.

"It is agreed, also, that on the trial and argument of this case, either party may use and refer to any act of the General Assembly of Alabama, general or special, or any ordinance of the city of Mobile, bearing on the matters in issue ; and the same shall be considered as a part of this agreed statement of facts, as if herein incorporated by copy. It is further agreed, that it be submitted to the judge of the Circuit Court of Mobile county to determine the law applicable to these facts—whether said plaintiff is liable to pay said tax, or any part thereof ; and if the decision is for plaintiff, judgment shall be rendered against defendant, for the proper sum, and costs ; and if for defendant, judgment for costs shall be rendered against plaintiff. From such judgment, either party may appeal to the Supreme Court."

This being all the evidence, as the bill of exceptions states, "the court charged the jury, on the request of the defendant in writing, that they must find for the defendant, if they believed the evidence ;" and this charge, to which the plaintiff excepted, is now asssigned as error.

The said act of February 4th, 1860, "to enable the corporate

[Dauphin & LaFayette Streets Railway Co. v. Kennerly.]

authorities of the city of Mobile to grant the privilege of constructing railroads within the corporate limits of said city," contains five sections. The first section authorizes the corporate authorities of the city " to grant to any person or persons, or association of persons, company or companies, the right and privilege of building and constructing, on and along any street or streets, or upon any land belonging to said city, and upon such terms and conditions as said authorities may think proper and prescribe, a railway or railroad for the conveyance and transportation of passengers and merchandise in cars or carriages to be run and drawn thereon;" with a proviso that only draught animals should be used in certain portions of the city, and another limiting the grant to any company to a period of twenty years, and authorizing the city to take possessson of the property at the expiration of that term, on paying the reasonable value thereof. The second section provides that "all railways, and a space of three feet on each side of the track of every railroad constructed in the city of Mobile, shall always be kept shelled, paved or planked, at the expense of the company," &c.; and authorizes the imposition of a fine for its violation. The third section gives the corporate authorities of the city "power to prescribe the width of each and every track of railway to be constructed, and in what part of the street the same shall be placed, and where and in what places turn-outs and sidings may be placed, and to prescribe the form of rail to be used, and, generally, to impose such terms and conditions as may be necessary to secure said tracks conforming to the grade of the streets and the drainage of said city, and offering as little obstruction as practicable to the passage of ordinary carriages and other vehicles." The fourth section declares, " that the said corporate authorities of Mobile may impose and collect, as a tax, from each person, company or association, erecting any railway under the authority of this act, at the rate of one dollar on every hundred dollars of the gross earnings of such railway company; and for the purpose of collecting the said tax, it shall be the duty of the tax-collector of said city, quarter-yearly, to call and demand of the president, secretary, or the financial officers of said railway company, or proprietors, statement under oath of the gross earnings of said railway company, and at the same time collect the amount so found to be due, as the tax aforesaid ; and the tax hereby authorized to be imposed and collected shall be in lieu and in full of all taxes and impositions of any nature, in favor of said city of Mobile, upon such railway, equipments, stock and appendages." The fifth section requires the articles of association to be filed in the office of the probate judge of Mobile, and confers upon the companies when organized the powers to purchase and hold

VOL. LXXIV.

[Dauphin & LaFayette Streets Railway Co. v. Kennerly.]

property, sue and be sued by their corporate names, and to enact by-laws and regulations not inconsistent with the laws of the State or the ordinances of the city of Mobile.—Sess. Acts 1859–60, pp. 261–63.

The Mobile Omnibus Company was incorporated under an act of the General Assembly approved January 26th, 1858, which gave the company power to hold property, to sue and be sued by their corporate name, to enact by-laws not inconsistent with the laws of the Sate, and to engage in the transportation of persons for hire, in carriages and omnibuses, any where within the corporate limits of Mobile.—Sess. Acts 1857–8, pp. 125–6. By an act approved February 24th, 1860, the charter of this company was amended by giving it power to increase the capital stock to $100,000 ; and the second section of the amendatory act further provided : "That said omnibus company, in addition to the powers heretofore granted under the act of incorporation, shall have power, upon obtaining the consent of the corporate authorities of the city of Mobile, to construct and use their railway or railways, on street or streets in said city, for the transportation of passengers and merchandise ; *provided*, however, that all the restrictions, limitations and conditions prescribed in an act passed by the present General Assembly, to enable the corporate authorities of the city of Mobile to grant the privilege of constructing railroads within the corporate limits of said city, shall apply to said omnibus company, should it obtain the privilege from said city authorities to construct and use such railroad."—Sess. Acts 1859–60, p. 493.

OVERALL & BESTOR, for appellant.

J. L. & G. L. SMITH, *contra.*

BRICKELL, C. J.—There are several questions to which the argument of counsel has been directed, we do not deem it necessary or proper now to consider. The first is, whether the fourth section of the act of the General Assembly approved February 4th, 1860, entitled "An act to enable the corporate authorities of the city of Mobile to grant the privilege of constructing railroads within the corporate limits of said city" (Pamph. Acts 1859–60, p. 262), imposing a specific tax upon the gross earnings of such railways, "in lieu and in full of all taxes and impositions of any nature, in favor of said city, upon such railway, equipments, stock and appendages," is to be regarded as a contract inviolable by subsequent legislation, or as merely offering a bounty, which can be withdrawn at legislative discretion. The second is, whether the "Port of Mobile," as

incorporated under the act of the General Assembly approved February 11th, 1879 (Pamph. Acts 1878–9, p. 392), is a new and distinct municipal corporation, or but the successor of the former corporation, known as the "City of Mobile." These questions can not arise, and become the legitimate subject of judicial consideration and decision, unless it be shown that from the act referred to authority to construct a railway was derived, or that to the company constructing a railway the benefit or right to the statutory rate of taxation has been extended, and that to other municipal taxation it is proposed to subject it.

Originally, the appellant was incorporated by a special act of the General Assembly, under the name and style of the "Mobile Omnibus Company," for the purpose of transporting for hire persons to and from points in the corporate limits of the city of Mobile, in carriages, vehicles, and omnibuses drawn by animals.—Pamph. Acts 1857–8, p. 115. Subsequently, by an act approved February 24th, 1860, the act of incorporation was amended; and the second section of the amendatory act reads : "That said omnibus company, in addition to the powers heretofore granted under the act of incorporation, shall have power, upon obtaining the consent of the corporate authorities of the city of Mobile, to construct and use their railway or railways, on street or streets in said city, for the transportation of passengers and merchandise; *Provided*, however, that all the restrictions, limitations and conditions prescribed in an act passed by the present General Assembly, to enable the corporate authorities of the city of Mobile to grant the privilege of constructing railroads within the corporate limits of said city, shall apply to said omnibus company, should it obtain from said city authorities the privilege to construct and use such railroad." Pamph. Acts 1859–60, p. 493.

The argument for the appellant is, that the operation and effect of the proviso above recited is to incorporate, as part of its charter, the fourth section of the act to which the proviso refers, thereby relieving it from all other municipal taxation than one per-centum of its gross earnings. It is an undoubted proposition, that the burden of taxation, whether it be State or municipal, ought to fall equally upon all persons, natural or artificial, who may be subject to it. "Taxation is the rule; exemption the exception."—Cooley on Taxation, 146. When, therefore, it is claimed that by legislation any species of property, whether it be the property of natural persons, or of corporations created for individual profit, is relieved from its just proportion of public burdens, the intention to release it ought to be expressed in clear and unambiguous terms: it ought not to be deduced from language of doubtful import, nor when

there is room for just controversy as to the legislative intent. Cooley on Taxation, 146; Burroughs on Taxation, 132; *Stein v. Mobile*, 17 Ala. 234; *Delaware Railroad Tax*, 18 Wall. 207; *Erie Railway Co. v. Pennsylvania*, 13 Wall. 492; *Bailey v. Maguire*, 22 Wall. 215. And it can not be of importance in the application of this principle, that the exemption claimed is not total and absolute—that it is partial and qualified, assuming the form of a commutation, or the substitution of a burden less onerous than that which is imposed on the property of others of like kind. An absolute, unqualified exemption, and a partial exemption, a commutation, differ in degree, not in character. A statute creating an exemption from taxation, or substituting, for the benefit of an individual or a corporation, taxation less onerous than that which others must bear, "belongs to a class of statutes in which the narrowest meaning is to be taken which will fairly carry out the intent of the legislature."—*Christ Church v. Philadelphia*, 24 How. 302. There is, also, another principle well settled, "that a corporation takes nothing by its charter, except what is plainly, expressly, and unequivocally granted, or necessarily implied, and that in all things else the powers which the State may exercise over its affairs are as full and ample as if it were an individual carrying on the same business."—*Bank of Pennsylvania v. Commonwealth*, 19 Penn. St. 155. When these principles are applied to the case before us, the argument of the appellant can not be supported.

The appellant derives corporate existence, and power and authority to construct a railway upon the streets of the city, from its own charter and the act amendatory thereof. It takes no right, franchise or privilege, from the general statute enabling the corporate authorities of the city to grant the privilege of constructing railways on the streets, or on any land belonging to the city. The power could not be exercised, until the consent of the corporate authorities was obtained. Obtaining the consent, was a condition precedent to the exercise of the power engrafted upon the grant. The power is, nevertheless, a franchise derived from the charter, and not from the corporate authorities when yielding consent to its exercise. The statutory exemption from municipal taxation, or commutation, is, by its terms, limited and confined to "each company, person or association," constructing a railway under the authority of the statute in which it is found. The reason for a distinction between those constructing a railway under the authority of the general statute, and a corporation constructing a like railway under a separate, independent, distinct grant proceeding directly from the legislative power, may not be obvious; nor is it within our province to inquire whether a good reason for it can be assigned. The words of the statute are clear and un-

ambiguous, leaving no room for a construction by which any other than the class designated can be entitled to the exemption from a just proportion of governmental burdens, which it is supposed they create.

The intent to extend the exemption to the appellant can not be deduced from the proviso to the second section of its amended charter. There are no words in it capable of being construed as a grant of either privileges or powers. When read in connection with the clause immediately preceding it, so far from adding to, or enlarging the general grant of power to the appellant, it will be seen it performs the office a proviso to a statute is generally intended to perform. "The proviso," said C. J. Marshall, "is generally intended to restrain the enacting clause, and to except something which would otherwise have been within it, or, in some manner, to modify the enacting clause." It is here a limitation or exception to a grant made,—to authority conferred.—*Rawls v. Kennedy*, 23 Ala. 240; *Wayman v. Southard*, 10 Wheat. 1. It subjects the franchise conferred upon the appellant to *restrictions, limitations, and conditions;* and for them refers to the general statute enacted at the same session of the General Assembly, enabling the corporate authorities of the city of Mobile to grant the privilege of constructing railroads within the corporate limits of the city. The extent to which the general grant of power and franchise is thereby limited and restrained is apparent upon an examination of the statute to which reference is made. The grant can not endure for a longer period than twenty years, and upon the expiration of that period the corporate authorities are clothed with power to take the railway, its rolling-stock, equipments and appendages, upon paying the reasonable value thereof. The use of any other motive power than that of draught animals is prohibited within certain localities. The manner of constructing the railway, the condition in which it is to be kept, and the penalty incurred if it is not constructed and kept as required, are prescribed. Power is reserved to the corporate authorities to prescribe the width of the track, the part of the street on which it is to be located, and the form of the rail to be used; to determine the places at which turn-outs and sidings may be constructed, "and, generally, to impose such terms and conditions as may be necessary to secure the said tracks conforming to the grade of the streets and the drainage of the city," &c. These are the *restrictions, limitations and conditions*, to which the general grant of power to the appellant to construct and use a railway is subjected; and subjection to them is the purpose of the proviso, qualifying and modifying the general grant. The words of the proviso are not capable of a just construction which will extend them beyond these

[Werborn v. Pinney.]

*restrictions, limitations and conditions,* converting them, from words qualifying the general words which precede, into an independent grant of privilege. We are, therefore, of opinion that the appellant is not entitled to the exemption claimed, and that its property and rights of property are as subject to municipal taxation, as fully and amply, as may be the property and rights of property of individuals.

The result is, the judgment of the Circuit Court must be affirmed.