(78 South. 313)

DAVIS v. STATE ex rel. COUNTY BOARD OF EQUALIZATION OF CHEROKEE COUNTY. (7 Div. 557.)

(Court of Appeals of Alabama. Feb. 26, 1918.)

1. STATUTES ⬡205, 215 — CONSTRUCTION — CONTEMPORARY CONDITIONS.

In construing a statute and arriving at legislative intent, the entire law must be considered, and in connection therewith conditions existing at the time of its enactment.

2. STATUTES ⬡207 — CONSTRUCTION — CONFLICTING PROVISIONS.

Where two sections of the same statute are in conflict, the last in arrangement of the act controls.

3. TAXATION ⬡197—EXEMPTIONS—COTTON.

Acts 1915, p. 388, § 2, subd. 7, exempting from taxation cotton grown during preceding year, being in conflict with section 4, exempting cotton in producer's hands or in hands of buyer for immediate sale, regardless of when it was grown, was repealed by section 4, and all cotton in the grower's hands, or in the hands of buyer for immediate sale, is exempt.

4. STATUTES ⬡181(1)—CONSTRUCTION—INTENT.

The fundamental rule in construing statutes is to ascertain and give effect to the legislative intent.

---

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, Cherokee County; W. W. Haralson, Judge.

Action by the State, on the relation of the County Board of Equalization of Cherokee County against James M. Davis, to recover taxes on cotton in the hands of the producer under assessment made in October, 1916. From a judgment for the State, defendant appeals. Reversed and rendered.

The agreed statement of fact is that the cotton, the basis of the assessment, was grown during the year 1915 by defendant, and that there were some four or five bales thereof garnered and harvested by said Davis prior to October 1, 1915, and that at that date Davis then had in his hands and possession at his home about 35 bales of said cotton, and that when he made his second regular assessment for the tax year beginning October 1, 1916, he assessed, under protest, 5 bales of cotton, explaining fully to the assessor at the time the number of bales of cotton on hand, and the time when the same was grown; that the board of equalization afterwards made its assessment of the cotton in question, and after a hearing made the final assessment from which this appeal is taken.

Hugh Reed, of Centre, for appellant. F. Loyd Tate, Atty. Gen., and Emmett S. Thigpen, Asst. Atty. Gen., for the State.

SAMFORD, J. This appeal involves the construction of section 4 of the revenue law adopted September 14, 1915 (Acts 1915, p. 389), which section reads as follows:

"Cotton and other agricultural products shall be exempt from taxation in the hands of the producer or in the hands of the purchaser purchasing the same for prompt shipment, and all manufactured articles including pig iron, shall be exempt from taxation in the hands of the producer or manufacturer for twelve months after its production or manufacture."

The contention of the state is that the exemption of cotton as provided in this section is only for cotton raised the preceding year. To sustain this contention, our attention is directed to section 2, subd. 7, of the same act, wherein a long list of exemptions are set out, among which is cotton which was grown the preceding year. Subdivision 1 of the same section exempts all manufactured articles which shall remain in the hands of the manufacturer thereof on the 1st day of October of the year in which the articles were manufactured. Cotton in the hands of the producer and manufactured articles in the hands of the producer. were exempted as provided in the subsection above set out in section 2061, subd. 8, of the Code of 1907, and re-enacted into the revenue law of 1911 (Acts 1911, p. 159). It was not until the act of 1915 that these items were made the subject of a separate section whereby they were specifically exempted.

[1] In construing this section and in arriving at the intent of the Legislature in enacting it, the entire law must be considered, and in connection therewith it is well to consider the conditions existing at the time of its passage, to the end that the section may be construed with reference to the object intended to be accomplished by it. 36 Cyc. p. 1110. In order to ascertain this object, it is proper to consider the occasion and necessity of its enactment. 36 Cyc. 1110. The entire act embraces 292 sections of more than 100 pages in the acts, dealing with every phase of taxation, and designed to give a new system of taxation for the state. Whole sections of previous revenue laws are brought forward into the new law, and other sections enacted independently to meet new conditions then existing. The state was passing through one of the most trying crises in its history. The entire financial world had been thrown into chaos on account of the war in Europe. Cotton, the staple product of the agricultural interests of the state, was without a ready market value, and was only to be sold at prices far below the cost of its production, and to sell it at those prices meant bankruptcy, not only to the producer, but to the entire business interests of the agricultural sections. Numerous bills were introduced in the Legislatures of this and other cotton states, both by individual members of the various Legislatures and through the suggestions of the chief executives of the different states, looking to the aiding of the producer to withhold this product from the market, not only to save himself from bankruptcy, but for the benefit of the general welfare. Some of these bills were enacted into law, and are now a part of the statute laws of this state. Under these conditions, section 4 was enacted into the revenue law of the state as an entirely new section, with the evident purpose of aiding the producer of cotton in holding the principal product of the farm in times of depression.

[2] It will be observed that the limited exemptions in conflict with section 4 occur in section 2. Where this is a fact, and sections are found to be in conflict, then the last section or provision in point of arrangement of the act must control. This is the rule declared in Alabama in Hand v. Stapleton, 135 Ala. 162, 33 South. 689; Ex parte Thomas, 113 Ala. 1, 21 South. 369; Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; and in the case of Williams v. State (Sup.) 72 South. 336,[1] Mr. Justice Thomas has collated the authorities upon this proposition, thereby rendering it unnecessary for us to do more than to call attention to the collation of authorities made by him.

[3] The provisions as to exemption of cotton from taxation in section 2 of the revenue law being repugnant to the provisions of section 4, and section 4 being the last section in point of arrangement, the provisions in section 2 must be held to have been repealed, in so far as they conflict with the provisions of section 4.

[4] The great fundamental rule in constru-

[1] 197 Ala. 40.

ing statutes is to ascertain and give effect to the intentions of the Legislature. Sunflower Lumber Co. v. Turner Supply Co., 158 Ala. 191, 48 South. 510, 137 Am. St. Rep. 20. This intention, however, must be the intention as expressed in the statute, and where the meaning of the language used is plain it must be given effect by the courts, or they would be assuming legislative authority. Horton v. Mobile School Commissioners, 43 Ala. 598.

To read and construe section 4 as contended for by the state would be to ignore all the rules of grammar, rhetoric, and punctuation, while to read and construe it as it is written clearly exempts cotton in the hands of the producer from taxation without any limitation. Considering the section itself as it is written, the conditions existing at the time of its passage, and the public policy of the state with reference to this product, we must conclude that it was the intent of the Legislature to exempt all cotton and other agricultural products in the hands of the producer or in the hands of the purchaser purchasing same for prompt shipment from taxation, under the general revenue bill of the state.

On the agreed statement of facts, the defendant was entitled to a judgment, and in rendering a judgment for the state the trial court was in error. The judgment is reversed, and a judgment is here rendered for the defendant.

Reversed and rendered.