# COMPAÑIA DE LOS FERROCARRILES DE PUERTO RICO

*v.*

# JOSÉ E. BENEDICTO, TREASURER OF PORTO RICO.

San Juan, Equity, No. 1002.

### INJUNCTION OF TAXATION.

Taxation—Sovereignty.

1. A sovereign of any kind has the right to tax all property within its limits not exempted, and there should be no unnecessary interference with this power, because it affects the very source of government.

Railroad Operation—Assignment.

2. A contract between the Compañia de los Ferrocarriles de Puerto Rico and the American Railroad Company places the control of the property in railroad use in the American Railroad Company, which must meet all public charges. What has been already earned is the property of the Compañia and is exempt from taxation.

Taxation—Steps.

3. In taxation there are the several steps of assessment of property, levy of rate on classes, collection of tax after warrant. In Porto Rico these are all under the control of the treasurer.

Assessment—Irregularity.

4. If the assessment has been made by the proper officers irregularities will be overlooked. In a suit between the government and the company there can be no settlement of the rights of the American railroad.

Property of Company—Property of Compañia.

5. Money in the hands of the operating company cannot be said to belong to the holding company. It is otherwise as to real estate long owned. Rolling stock and equipment in process of acquisition would belong to the operating company. If already paid for, it belongs to the Compañia. The contract between the two corporations cannot be taxed as property of the operating company.

XI. Porto Rico.—7.

Compañia de los Ferrocarriles v. Benedicto.

Tax Lien—Personal Property.

    6. Equity enjoined taxes upon realty because they create a cloud upon the title, where the tax proceedings are presumptively valid. Where the same assessment includes realty and personalty, equity will, under its usual policy, go on and do complete justice as to personalty also.

Treasurer—Assessor, Collector.

    7. As assessor great discretion is allowed him, for he acts semi-judicially. Secus as to his duties as collector, which are administrative. A Federal court may enjoin action of a local official under a void law, where the administration of a valid law passes beyond its proper scope, where a collector acts ultra vires.

Opinion filed December 20, 1918.

## Statement of Facts.

    The facts involved in this case are not complicated. It is shown that the Island of Porto Rico is mountainous, and not suitable for railroad development, and consequently it was not until 1886 that this was undertaken under royal decree December 17, for auction of the franchise. The plan actually adopted related to the construction of a railroad from San Juan along the north and west coast of the Island. As an inducement to its construction the Spanish government agreed not only to exemption from taxation, but to a subvention amounting to 8 per cent, besides land grants and privileges as to customs duties on material and the like. The rights passed to the present French company two years later, but the road was only partially constructed by the time of the American occupation, which necessitated a new arrangement, inasmuch as there were arrears due the company, and government aid could not, according to American institutions, be afforded in the way indicated.

Compañia de los Ferrocarriles v. Benedicto.

Consequently on October 23, 1901, as compromise claims were waived, old franchise canceled, and an ordinance was adopted by the Executive Council, approved by the President of the United States, granting a new franchise and calling for exemption from taxation for twenty-five years. In order to meet legal objections, this feature was on February 4, 1902, embodied in an act of the local legislature, the exemption applying not only to the company, but to "its successors and assigns." The conditions were accepted by the railroad company.

It was found expedient to incorporate an operating company called the American Railroad Company of Porto Rico under the laws of New York, and a contract was entered into between it and the plaintiff on March 22, 1902, by which the operating company was for twenty-five years to take all physical property of the plaintiff herein, meet all expenses, and pay the proceeds, less 5 per cent retained as compensation, over to the plaintiff. There was a modification of this contract in 1906 in details not important in this case. In the operating contract the subject of taxes is not mentioned, but it was provided as follows:—

"Art. VI. (b) The society will sustain with the local government all relations concerning the operation of the lines; (c) The society will settle with the insular as well as with the Federal government, and this under its own responsibility, all accounts, and will furnish all the necessary data for the collection of sums that may become due by said governments."

The treasurer of Porto Rico for the year 1917–18, after correspondence and after correction of valuation by board of review and equalization, assessed the American Railroad Com-

Compañia de los Ferrocarriles v. Benedicto.

pany of Porto Rico for taxation at the sum of $1,000,000, divided as follows:—

"Real estate (pier) $40,000," "rolling stock and equipment, $500,000," "cash, $57,000," and "other personal property, material, and contract, $403,000." There seems to have been no formal tax return, but correspondence shows the railroad company always declared the property to belong to the plaintiff. The treasurer collected for the first half of said year the sum of $6,636.50. This tax was paid under formal protest before a notary by the American Railroad Company, and suit was brought for the recovery of taxes so paid, all under the Act of the legislature of March 9, 1911. This suit was dismissed on demurrer. For the second half of the fiscal year a similar assessment amounting to $7,019.12 was levied, and to enjoin its payment the present suit was brought by plaintiff, claiming as owner of the property affected. A preliminary injunction was granted and testimony was taken, the franchises and other evidence being put in evidence. The testimony was mainly that of officials of the American Railroad Company, such as Villard, and tended to show that the American Railroad Company had no physical property in Porto Rico except what it derived from the plaintiff herein, used for the benefit of the plaintiff herein, and was ultimately to be turned back over to the plaintiff herein. The American Railroad Company according to this did no other business except that of operating the railroad of the plaintiff. The case was submitted on June 22, 1918.

Mr. *F. H. Dexter* for plaintiff.

Messrs. *Jaime Sifre* and *Ferdinand Tannenbaum* for defendant.

Compañia de los Ferrocarriles v. Benedicto.

HAMILTON, Judge, delivered the following opinion:

1. There is no doubt that a sovereign, whether state or territorial, has the right to tax all property within its limits, no matter by whom owned, unless exempted by law. Porto Rico, is a quasi sovereignty, and from its position has in some respects been granted greater powers than usually conferred upon the continental territories of the United States. Whether it be regarded as having these powers as a separate entity, or as exercising them as the delegate and representative of the sovereign, the United States, is not material. Among these powers is that of taxation, and the power is essential to the existence of this or any other sovereign. No unnecessary interference should be had with this power, not only because it may involve suit against a sovereign, but because no matter against whom the suit is directed it affects the public government itself. The general rule is that it is far better for an individual to suffer and pursue statutory remedies for reimbursement than for the very government itself to be tied up for the lack of means to operate its agencies. This result may not follow from a particular suit, but if a suit is permitted there is no limit to the suits which may follow. The local government is maintained by taxation and no question can be made of this right so long as it does not transcend the powers granted by the Organic Act. Equality in bearing the just burden of government is the cornerstone of Anglo-Saxon liberty. Moog v. Randolph, 77 Ala. 602. Says Chief Justice Lowrie: "There is nothing poetical about tax laws; wherever they find property they claim a contribution for its protection." Finley v. Philadelphia, 32 Pa. 381. To the same effect are Catlin v. Hill, 21 Vt. 152, and People ex rel. Hoyt v. Tax & A. Comrs. 23 N. Y. 238. Tax power is plenary except so far as it is limited

by the Constitution. Birmingham v. Klein, 89 Ala. 461, 8 L.R.A. 369, 7 So. 386. Everything is under the jurisdiction and taxing power of a state which exists by its authority or is introduced by its permission. M'Culloch v. Maryland, 4 Wheat. 429, 4 L. ed. 607. The taxing power is limited to what is within the jurisdiction of the state. St. Louis v. Wiggins Ferry Co. 11 Wall. 423, 429, 20 L. ed. 192, 194; State Tax on Foreign-held Bonds, 15 Wall. 300, 319, 21 L. ed. 179, 186; Delaware R. Tax, 18 Wall. 206, 229, 21 L. ed. 888, 895. It has been held that a life tenant must pay taxes during his tenancy. Washburn, Real Prop. 112, § 28.

2. The term of the operating contract and of the tax exemption was originally for the same period of twenty-five years, and this may account for there being no mention of taxation in the operating contract. The exemption as enacted is for the Compañia de los Ferrocarriles de Puerto Rico, their successors and assigns, and it may be a question whether the American Railroad Company is not pro hac vice an assign under this provision. There was, it is true, no assignment of the franchise, but there certainly has been an assignment of the operation of the railroad. If the Compañia were operating the railroad, there could be no serious question that everything connected with the operation would be exempt. If, for reasons good to itself, the Compañia prefers to have an agent operate the railroad, why is not the same thing true in favor of that agent? It would be difficult to class the American Railroad Company except as either an agent or part-assignee of the Compañia. It is quite true that exemptions from taxation are strictly construed. Dauphin & L. Streets R. Co. v. Kennerly, 74 Ala. 583. It has been forcibly said by Mr. Justice Black

that there can be no doubtful franchise, that is, if there is a doubt it will be resolved in favor of the public.

This question, however, does not arise at present, for this is not a claim by the American Railroad Company of Porto Rico of an exemption. It may well be that the American Railroad Company of Porto Rico owns property which under a different system, or for different reasons, is subject to taxation, while that of the original Compañia, plaintiff herein, is not. The contract itself may be such property, if the situs can be considered to be in Porto Rico; for in the case, for instance, of bonds, the tax situs may be different from the domicil of the owner. State Tax on Foreign-held Bonds, 15 Wall. 300, 324, 21 L. ed. 179, 188; Catlin v. Hill, 21 Vt. 158. It of course, on the other hand, may be true that commercial securities, being negotiable instruments, are in a different category from personal contracts like the one at bar. Mercer County v. Hacket, 1 Wall. 83, 17 L. ed. 548. The general rule is that the state in which the personal property is actually situated affects that property by its laws. Story. Conf. L. §§ 18, 550; United States v. Erie R. Co. 106 U. S. 327, 27 L. ed. 151, 1 Sup. Ct. Rep. 223. On the other hand it has been held that a debt exists at the situs of the creditor's residence and may be taxed there. Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. ed. 558.

Whatever may be true in this regard, however, is not necessarily involved in the case at bar. The American Railroad Company is a separate entity, making its own return, and entitled to pursue its own remedies. The plaintiff herein can only complain if property belonging to it is seized or threatened for a tax which is not due by the plaintiff itself.

3. The method of taxation has differed in different countries

Compañia de los Ferrocarriles v. Benedicto.

and at different times.    In Spain much was regulated by
special royal decrees, but the Anglo-American system contem-
plates separate steps generally taken by different officials, al-
though in Porto Rico the whole seems to be under the treasurer
as head of the revenue department.    (1) There is the assess-
ment, based upon the return of the taxpayer, which, however,
is subject to revision.    The assessment is very important.
Cooley, Taxn. 352.    (2) The levy of the rate of taxes upon
the different classes of property, which must be uniform within
each class; and (3) the collection after a warrant has issued
to the tax collector.    Since the American occupation Porto Rico
has adopted for local purposes the American system, although
centralized under one official.    It is the duty of the treasurer's
office to revise assessments and to assess escapes.    Pol. Code,
§§ 286, 287.    All property not exempted from taxation shall
be assessed and taxed, Political Code, § 290 (as amended), as
follows: "That all property not expressly exempted from taxa-
tion shall be assessed and taxed.    For the purposes of the as-
sessment and collection of taxes, real property shall be deemed
to be synonymous with immovables as defined in §§ 333, 334
and 335 of the Civil Code:    Provided, however, that machin-
ery, vessels, instruments or implements not fixed to the build-
ing or soil shall not be deemed to be real property.    Personal
property shall include such machinery, vessels, instruments or
implements not fixed to the building or soil, live stock, money,
whether in the possession of the owner thereof or held by or on
deposit with some other person or institution, bonds, stocks,
certificates    in    unincorporated    syndicates    or    partnerships,
patent-rights, trademarks, franchises, concessions and all other
matters and things capable of private ownership and not in-

cluded within the meaning of the term 'real property,' but shall not include book credits, promissory notes nor other personal credits." [Compilation 1911, § 2942.]

The assessment roll of the current year is that of the previous year amended and revised as soon as possible after January 15th of each year. Pol. Code, § 295. For the purpose of assessment the taxpayer returns a list of his property under oath (Pol. Code, § 300) under the penalty of being guilty of a misdemeanor (§ 304) and the assessor may examine taxpayers as to their property (§ 305). For the purpose of revising the assessment there is a board of review and equalization composed of the treasurer and other officials (§ 308). The conclusion of the board is final (§ 310). When assessed the tax for the current year and the three preceding years against real property is a first lien (§ 315). The personal property of corporations shall be assessed by the treasurer under a special system (§§ 317, 321). The value of rolling stock and roadbed is assessed by the treasurer as a special category, and for purposes of local taxation prorated among the municipal districts. From the total value of shares shall be deducted the assessed value of real property, interest, rolling stock, and roadbed (§ 321). There are penalties for improper returns (§ 323). The treasurer may make additional regulations (§ 327). As to warrant for collection it is declared in § 328 (as amended) as follows: "The treasurer shall compute, upon the assessed valuation of the property of each person as recorded in the assessment books, the amount of insular and municipal taxes owing by such person, and the said amount shall be entered, with sufficient particularization and description of the persons and property taxed, upon suit-

able books of record. The treasurer shall deliver, in due time, to the respective collectors such tax receipts or tax rolls as may be necessary, and charge said collectors therewith. The possession of such tax receipts or tax rolls for the taxes due upon any property shall be sufficient warrant, on the part of any collector, for the collection of said taxes and for the seizure and sale of said property, in the manner hereinafter provided, if said taxes be not paid within the period of time provided in § 330 of this title." [Compilation 1911, § 2980.]

Taxes are payable on the 1st day of July and January and are delinquent if not paid within sixty days, in which case the collectors shall collect the additional sum of 1 per cent of the amount thereof for each month. An Act of March 9, 1911 (Pamphlet Acts, p. 124), provides for payment of taxes under protest, under which the taxpayer pays and then sues to recover payment. Its §§ 4 and 5 provide as follows:—

"4. Be it further enacted that, there shall be no other remedy in any case of the collection of revenue, or attempt to collect revenue illegally.

"5. Be it further enacted that, no writ for the prevention of the collection of any revenue claimed, or to hinder and delay the collection of the same, shall in any wise issue, either supersedeas, prohibition, or any other writ or process whatever; but in all cases in which, for any reason, any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided, and none other.

There are other provisions, such as franchise tax, excise taxes, and the like, which need not be considered in this case.

4. Provided the assessment is made by the proper officers,

Compañia de los Ferrocarriles v. Benedicto.

mere irregularities will be overlooked. Cooley, Taxn. 354. Whatever may be true of the list to be returned by the tax-payer, the assessment does not have to describe each item of the property. This would not be practicable, and all that is necessary is that the assessment describe the classes of property so as to give sufficient notice to the taxpayer. Cooley, Taxn. 371.

It is to be borne in mind, however, that this is not a suit in which the particularity of the assessment can properly be inquired into. It is not a suit between the taxpayer and the taxing government. The assessment has been made upon a return given by the American Railroad Company of Porto Rico, and the American Company of Porto Rico is not a party to this suit and is not herein complaining of anything. As between the government and the American Railroad Company the assessment, based upon the return of that company, may be sufficient. The interest of the plaintiff is of a different character. If its agent or representative, the American Railroad Company, incorrectly pays taxes and seeks to charge the plaintiff therewith in an account, that is a matter to be attended to when it comes up. The only complaint the plaintiff can make in the suit at bar is that the taxing power seeks to levy some-one else's taxes upon the property of the plaintiff and thereby creates a cloud upon the title of its real property or threatens to seize its personal property to satisfy another's debt for such taxes.

5. With these principles in view the court will take up not so much the assessment as the acts of the defendant under the assessment and see whether the plaintiff can complain. As set out in the pleadings, the assessment contains four classes of

Compañia de los Ferrocarriles v. Benedicto.

property, and it is agreed upon the hearing that these classes embrace certain property. For the purpose of seeing the effect upon the plaintiff, these classes will be analyzed. The simpler elements of the assessment will be discussed first.

It would seem that plaintiff cannot claim the item of cash $57,000 was not properly assessed against the American Railroad Company. Money has no earmarks. It is perhaps seldom that cash is taxable, because it is generally the proceeds of something else that is taxable and is merely on its way towards reinvestment; but this "cash" may represent the profits of the Railroad Company. It is provided in the contract that the operating company shall keep all accounts, and that company returns $57,000 as "cash," and it is difficult to see how a third party can lay claim to it. If the operating company tries afterwards to charge up against the Compañia a tax upon its own property there might be room for debate; but such debate cannot be made against the power of a sovereign to tax. It would seem that this item is properly assessed so far as the plaintiff herein is concerned.

On the other hand it would seem equally clear that the real estate valued at $40,000 is the property of the plaintiff, for it is agreed that it consists only of pier 5, which the plaintiff built upon land derived from the public authorities and paid for by the earnings of the Compañia. Nothing need be decided as to the right to exact payment of a tax by the treasurer from the American Railroad Company, but it is clear that no lien should fasten upon this pier, and to this extent the tax must be declared invalid.

There is more doubt as to the item called rolling stock and equipment, $500,000. Rolling stock and equipment undoubt-

Compañia de los Ferrocarriles v. Benedicto.

edly pertain to a railroad, and it may not be certain whether it has been furnished by the American Railroad Company and already paid for by the Compañia, plaintiff in this suit. Upon the whole, however, the tendency of the evidence is that this is not something in process of acquisition, but that which in the main has been owned for some time and must be regarded as already paid for by the Compañia. In this view of it the tax is improper because laid upon what was by government contract exempted from taxation.

The remaining item is "other personal property including contract, $403,000." The testimony of Villard is that this is Compañia property, and that the railroad company has no property. But at least the contract is not property of the Compañia. Whether the contract is taxable against the American Railroad Company is not material in this case, for if it is not or if it is misdescribed, the local statutes afford a proper remedy to the taxpayer. It is evident that the $403,000 is not meant as a valuation of the contract alone, and if there is any personal property of the plaintiff included, it should not be taxed; but neither the bill nor the evidence makes clear what is covered.

The result, therefore, is that so far as the plaintiff is concerned no tax should be assessed upon the real property, the rolling stock, and equipment, nor any other personal property used in the operation of the railroad. The "cash" and "contract" are not shown to belong to the plaintiff, and their assessment will not be affected by this principle.

6. There might be a question as to the right of the court to interfere to protect personal property, inasmuch as a tax does not create a lien upon personalty. However true this might be

if the bill was as to personalty alone, there would be nothing gained in stopping half way with the case as it stands. Equity will enjoin the levy of taxes upon realty because it creates a cloud upon the title. Cooley, Taxn. 778. The stricter rule was that this can only be done where there is a real cloud, and not where the proceedings are void on their face, the theory being that in the latter case the proceedings are a nullity and there is no defect to remove. The more modern rule is for the court to act where proceedings are on their face presumptively valid, whether so in law or not. This is a convenient rule and enables the party whose title is threatened to settle all questions concerning it once and for all. Cooley, Taxn. 782. It has been held that an occupant who is not the owner may file a bill to remove a cloud cast by an illegal tax. Barnard v. Hoyt, 63 Ill. 341. It is generally held that where the tax is on personalty only the remedy by injunction will not be allowed, and the party is remitted to a suit at law. Cooley, Taxn. 778.

Where the assessment embraces, however, realty and personalty also, it would seem that the court should, under its usual policy, go on and do complete justice, instead of remitting the party to his remedy at law as to part of a joint assessment. Thus a plaintiff has been permitted to add a formal party and secure incidental relief as to personalty. Folkerts v. Power, 42 Mich. 283, 3 N. W. 857; Cooley, Taxn. 783. The case at bar is even stronger, for it is not a suit by a taxpayer, but by a party claiming to own the property erroneously assessed against an alleged taxpayer, and who has no adequate remedy under the legal proceedings prescribed by the local law.

7. The proceeding at bar is against the treasurer as collec-

Compañia de los Ferrocarriles v. Benedicto.

tor. As assessor great discretion would be allowed him, for he is in such case acting semijudicially. Cooley, Taxn. 730. As collector he is in a different category, for his powers and duties are administrative or ministerial. He cannot act on process valid on its face unless it is also valid in fact. Cooley, Taxn. 801, 804. Suits against tax collectors are very frequent, and are not held to infringe the rule against suing the sovereign. There seems to be no question: (1) that the Federal court here as well as in the states may enjoin action of a local official under a void law; (2) that it may take the same action where the administration of a valid law passes beyond the scope of the law itself. These points have been decided in many cases. (3) But if a tax collector acts ultra vires and levies upon the property of a person other than the owner of the property assessed, he is not proceeding according to any law, and his proceeding is void and may be enjoined. A court will not lightly enjoin the collection of taxes, for they are the very life blood of the government. The remedy by injunction, which is the usual one in tax cases, should be granted with extreme caution. Cooley, Taxn. 762. When an injunction has been applied for to enjoin the collection of a tax partly legal and partly not, the court may make the payment of the legal portion a condition precedent. State R. Tax Cases, 92 U. S. 575, 23 L. ed. 663; German Nat. Bank v. Kimball, 103 U. S. 732, 26 L. ed. 469. The case at bar, however, does not seem to come within the principle, because the plaintiff is not a taxpayer at all, and the court in this case could not if it would make any order as between the treasurer and the American Railroad Company, which is not a party to the suit.

It follows, therefore, that in levying upon real property and

Compañia de los Ferrocarriles v. Benedicto.

rolling stock and all other property used and necessary for the operation of the railroad the treasurer is levying upon what does not belong to the taxpayer, the American Railroad Company of Porto Rico, and what does belong to the plaintiff herein, the Compañia de los Ferrocarriles de Puerto Rico, exempt from taxation, and the injunction will be continued as to such property. It is, however, dissolved as to all other property assessed herein.

It is so ordered.