167 So. 256

**HENRY v. McCORMACK BROS. MOTOR CAR CO.**

**6 Div. 867.**

Supreme Court of Alabama.

Feb. 20, 1936.

Rehearing Denied April 23, 1936.

A. A. Carmichael, Atty. Gen., Frontis H. Moore, Asst. Atty. Gen., and Ernest Matthews, of Birmingham, for appellant.

Lange, Simpson & Brantley and Ormond Somerville, Jr., all of Birmingham, for appellee.

THOMAS, Justice.

The petition is for mandamus to compel the issue of a dealer's license under the provisions of the General Revenue Act of 1935, General Acts 1935, p. 445, § 348, Schedule 12; p. 557, § 350.

The major questions presented for decision are: What was the expressed legislative intent by the several provisions of the statute considered in pari materia; and if the proviso in section 348, Schedule 12, governs, is it offensive to section 221 of the Constitution?

There are recognized canons of statutory construction that will be observed. In construing statutes, they are: (1) "Where the language of a statute is clear and the intent obvious, there is no room for construction; but where the meaning and intent are not obvious the court must attempt to arrive at the legislative intent." City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159, headnote 1. (2) The legislative intent will be sought from the whole subject, where the language is not clear or obvious. Hamilton et al. v. Pullman Car & Mfg. Corporation of Alabama (Ala.Sup.) 163 So. 329;[1] Davis v. State ex rel. County Board of Equalization of Cherokee County, 16 Ala.App. 397, 78 So. 313. (3) In determining the intent and purpose of an enactment, courts will

look to the context and all of its provisions, and, if possible, give the act effect according to the legislative intent so expressed. Edwards v. Doster-Northington Drug Co., 214 Ala. 640, 108 So. 862; Armstrong v. Sellers et al., 182 Ala. 582, 62 So. 28. (4) Any apparent mistakes in the wording of the statute will be corrected, where the other provisions of the act or the legislative journals furnish such means of correcting such apparent mistakes as will fairly carry out the intent of the Legislature. State ex rel. Leslie et al. v. Bracken et al., 154 Ala. 151, 45 So. 841; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of Maryland, 223 Ala. 385, 136 So. 800; State ex rel. Norquist et al. v. Glennon, 227 Ala. 208, 211, 149 So. 257; Dauphin & LaFayette Streets Railway Co. v. Kennerly, 74 Ala. 583. (5) Where there is doubt as to the meaning and intent of a statute by reason of the language employed, or arising from the context, courts may look to the history, conditions which led to that enactment, the material surrounding circumstances, the ends to be accomplished, and evils to be avoided or corrected, in order that the legislative intent be ascertained and given effect, if possible. McCreless v. Tennessee Valley Bank, 208 Ala. 414, 94 So. 722; Prowell v. State ex rel. Hasty et al., 142 Ala. 80, 39 So. 164.

█ It is further established that exemptions from taxation must be strictly construed in favor of the taxing power (Hamilton et al. v. Pullman Car & Mfg. Corporation of Alabama [Ala.Sup.] 163 So. 329; [1] Pullman Car & Mfg. Corporation of Alabama v. Hamilton et al., 229 Ala. 184, 155 So. 616); that is, that exemptions from taxation must be clear and unambiguous and may not be deduced and allowed from language of doubtful import. (State v. Kidd, etc., 125 Ala. 413, 28 So. 480; Brown, Ins. Commissioner v. Protective Life Insurance Company, 188 Ala. 166, 66 So. 47; Cooley on Taxation [4th Ed.] § 672, page 1403). This is the rule long prevailing in this jurisdiction for the construction of such exemptions contained in charters as well as in statutes. Dauphin & LaFayette Streets Railway Co. v. Kennerly, 74 Ala. 583; Mobile & Spring Hill Railroad Co. v. Kennerly, 74 Ala. 566; Cooley on Taxation (4th Ed.) § 672, page 1411.

█ It is further declared that in the construction of statutes, charters, and contracts, it is often true that the doctrine of ejusdem generis or otherwise stated as noscistur a sociis (Black's Law Dictionary, pages 411, 527; 1 Vent. 225; 3 Term.R. 87; Broom, Max. 588) may be resorted to in the ascertainment of the intent and meaning of doubtful and associated words and phrases (State v. Western Union Telegraph Co., 196 Ala. 570, 72 So. 99; Life & Casualty Ins. Co. of Tennessee v. Bottoms, 225 Ala. 382, 143 So. 574).

█ It is insisted, and it is the rule, that a prima facie presumption obtains in favor of the proper exercise of the taxing power; that he who claims exemption therefrom has the burden of establishing the right thereto. Hamilton et al. v. Pullman Car & Mfg. Corporation of Alabama, 231 Ala. 7, 163 So. 329.

The question of the legislative intent to be gathered from the revenue act recurs, as to whether or not a license for the conduct of a business such as that of petitioner's was required in behalf of and for the benefit of the county, when the several related provisions of the act are considered in pari materia. General Acts 1935, p. 445, § 348, Schedule 12, § 350, pp. 557, 558.

The immediately pertinent provisions of the act are:

"Section 350. Before any person, firm, or corporation shall engage in or carry on any business or do any act for which a license by law is required, he, they or it, except as otherwise provided, shall pay to the Judge of Probate of the County in which it is proposed to engage in or carry on such business or do such act, the amount required for such license, and shall comply with all the other requirements of this Act; * * * (a) Whenever a license is levied in this Act, there shall be collected both a State and County license for each place of business, except as specifically otherwise provided."

And section 348, Schedule 12:

"Upon each and every agent of and/or dealer in, and upon every person soliciting orders for the sale or purchase of automobiles, motor cars, or other self propelled vehicles, except motocycles (motorcycles) and except any person regularly employed by a said agent of, and/or dealer in, which said agent of, or dealer in, has paid the privilege tax or license herein provided for, the

following privilege or license tax shall be levied and collected, for each place of business, to-wit: In cities or towns having a population under Twenty-five hundred people or less, Fifty Dollars ($50.00). In cities or towns having a population over Twenty-five hundred and less than Five thousand, Seventy-Five Dollars ($75.00); in cities or towns having a population of over Five thousand and less than Ten thousand, One Hundred Dollars ($100.00); in cities or towns having a population of over Ten thousand and less than Twenty-five thousand, One hundred and twenty-five Dollars ($125.00); in cities or towns having a population of over twenty-five thousand and less than fifty thousand, One hundred and fifty Dollars ($150.00); in cities or towns having a population of over fifty thousand, Two hundred Dollars ($200.00). Provided that upon payment of the license according to the foregoing schedule, a dealer in automobiles may do a general automobile and automotive business and not be required to pay any further or additional state and county licenses to handle or sell automobile, accessories and parts, radios, tires and batteries, or for the operation of a garage for storage where a charge is made, or for the repair of painting of motor vehicles or trucks."

■ A reference to House Bill 324—the revenue bill as originally introduced—will show that the aforequoted portion of section 350 was contained and enacted without amendment in the respect indicated; that the provisions or proviso of Schedule 12, § 348, of the act were not so contained in the bill as originally introduced in the House, the same being added during legislative consideration thereof. That is to say, as first introduced, the bill contained *no provisions* as enacted for "cities or towns" ranging from $50 to $200, dependent on their populations, as now contained in the statute; and a license schedule for *"counties"* having "the respective population basis" indicated, ranging from $25 to $125 levy on "agent of and/or dealer" in "automobiles, motor cars, or other self propelled vehicles, except motorcycles," etc. In the act as passed, the provisions for *cities or towns* were incorporated, and those for *counties* eliminated, and the proviso in question inserted. It may be that the draftsmen of the bill as passed in these respects had as a guide the construction of section 221 of the Constitution, as construed in Exchange Drug Co. v. State Tax Commission et al., 218 Ala. 115, 117 So. 673, Exchange Drug Co. v. McNeel, 278 U.S. 577, 49 S.Ct. 176, 73 L.Ed. 515, to avoid the inhibition of the Constitution. Any reasonable construction of which a statute is susceptible will be indulged to avoid a conflict with the provisions of organic law. The rule is thus stated: Where a statute is susceptible of two interpretations, that which upholds rather than defeats constitutionality will be adopted. Jefferson County v. Busby, 226 Ala. 293, 148 So. 411.

■ In view of the argument made, we take into account the legislative history of the schedule and its several related clauses and classifications. It is urged that in ascertaining the legislative intention many schedules use the words "motor vehicle" instead of "automobile" (Schedules 14, 15, 17, 158.12, 158.13, 158.14). Some schedules contain the specific provision that "no license shall be paid to the county;" others specifically indicating the sum to be paid (Schedules 2, 5, 9, 10, 33, 48, 58, 100, 106, 146, 147). In Schedule 16 the words employed are: "Each person selling *motor vehicle accessories,* including *automobile radios,*" etc. There the words *motor vehicle* and *automobile radios* were used as adjectives, and not in the sense of nouns. The question then propounded is: Is it reasonable to assume that when the Legislature used the word *automobile* in Schedule 12, it was used in the sense of a *plural noun* rather than an adjective qualifying and describing automobile accessories? We think the word *automobile* in Schedule 12 means in its context, *automobile accessories* rather than the noun *"automobiles."* If the word *"automobile"* is a plural noun and means *"automobiles,"* then the word *"state"* is meaningless as applied to radios, accessories, and parts. (Italics supplied.)

We mean by this that the words "state and county licenses" are practically a single levy, and so treated when it comes to creating an exemption. The act levying a state and county license on each established place of business provided by that schedule that such dealer or agent was not required to pay "any further or additional State and County licenses to handle or sell *automobile* accessories and parts, (automobile) radios, (automobile) tires and batteries," etc. As insisted by counsel for appellant, "What does the term 'further or additional State and County licenses' mean as applied to the automobile dealer him-

200

self?" It may be to meet the question raised in Patterson v. State, 16 Ala.App. 483, 79 So. 157, where the dealer did business at other points. However that may be, the insistence of appellee would render nugatory the word "state" as applied to the phrase or proviso in the statute now for consideration. The word "county" as used in the phrase is not more significant than the word "state" employed in the same connection. The words employed, as those of the statute providing for state and county licenses, are to be considered in pari materia and as a part of the system of levying a license for the state, and at the same time a license for the county, which is fixed in section 350 of the act at 50 per cent. of the license so required for the state.

The provision for exemption from county levy is subject to the rule of a strict construction, as is an exemption from state levy. Any other construction would ignore the language, purpose, and intent of the act and its uniform construction and administration indicated in the analogies to be found therein. The Legislature recognized this fact by the specific manner in which many schedules indicate that "no license shall be paid to the county" under the general provisions of section 350.

We hold that it was not intended to interdict the collection of county licenses by Schedule 12. If such was the intention, why was not this specifically done, as was done in Schedules 9 and 10?

The first paragraph of Schedule 12 considered with section 350 levied state and county licenses, and the provision relieving from "further or additional state and county licenses" means what it says—"further or additional" licenses; it does not mean state and county licenses on established places of business.

The view we have indicated and the construction given presents no room for application of Exchange Drug Co. v. State Tax Commission et al., 218 Ala. 115, 117 So. 673, Exchange Drug Co. v. McNeel, 278 U.S. 577, 49 S.Ct. 176, 73 L.Ed. 515.

The court erred in granting the writ of mandamus, and that judgment is reversed and one here rendered to the contrary effect.

Reversed and rendered.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

